415 So.2d 166 (1982)
Mario GALLEGO, Petitioner,
v.
The Honorable H. Mark PURDY As Judge of the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, Respondent.
No. 82-748.
District Court of Appeal of Florida, Fourth District.
June 23, 1982.
*167 Stephen J. Golembe of Law Offices of Mishkin & Golembe, Miami, for petitioner.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for respondent.
HERSEY, Judge.
Mario Gallego was arrested on February 26, 1981, and on April 22, 1981, was charged by Information with trafficking in cocaine in an amount of 28 grams or more, but less than 200 grams. Subsequently, on one or more occasions, defense continuances were granted. On February 23, 1982, a motion by the state to amend the Information to charge trafficking in cocaine in an amount in excess of 400 grams was granted. It is undisputed that there were two separate amounts of cocaine and that they were involved in the same criminal episode.
Gallego's motion for discharge directed to the amended information and based upon a violation of the speedy trial rule was denied. By petition for writ of prohibition Gallego seeks to have this court oust the trial court of its jurisdiction to proceed on the enhanced charge.
As we did in Sherrod v. Franza, 396 So.2d 1136 (Fla. 4th DCA 1981), we deny the petition primarily on its merits but also on the grounds of the unavailability of prohibition to redress an alleged violation of the speedy trial rule.
Addressing, first, the merits, we find no violation of the speedy trial rule. A defense continuance constitutes a specific waiver of the speedy trial rule (or, more properly, an estoppel precluding reliance on the rule) as to all charges which emanate from a single criminal episode. State v. DeSimone, 386 So.2d 283 (Fla. 4th DCA 1980); State v. Corlew, 382 So.2d 787 (Fla. 2d DCA 1980).
Second, we adhere to our position in Sherrod that prohibition, and its counterpart mandamus, do not lie to review an alleged violation of the speedy trial rule. We differ in this view from the Fifth District, Bates v. Keating, 396 So.2d 1172 (Fla. 5th DCA 1981), but see Bouchacra v. Leffler, 413 So.2d 791, (Fla. 5th DCA, Case No. 82-151, opinion filed April 7, 1982); and the Third District, V.C. v. Ferguson (Fla. 3d DCA Case No. 82-323, opinion filed April 20, 1982).
The holding in Sherrod that prerogative writs are unavailable to remedy speedy trial rule violations is based upon (1) the fact that conceptually neither prohibition nor mandamus is appropriately invoked to redress the mere violation of a procedural *168 rule and (2) precedents in the case law from the Florida Supreme Court which support the use of these extraordinary remedies involve a violation of the constitutional right to speedy trial even when couched in terms of the speedy trial statute which preceded the speedy trial rule.
Both prohibition and mandamus are extraordinary remedies. They have been utilized interchangeably in the area of violations of the constitutional right to speedy trial. Use of the writ of prohibition stops the proceedings and prevents the inferior court from continuing to exercise its jurisdiction or from acting in excess of its jurisdiction. Mandamus, while accomplishing primarily the same result, by its nature is affirmative in operation and its most frequent consequence is discharge of the defendant and dismissal of the criminal charges. Neither writ is available to address a mere error of law or an abuse of discretion by the trial court.
In English v. McCrary, 348 So.2d 293, 296-298 (Fla. 1977), the supreme court said of the writ of prohibition:
Prohibition is an extraordinary writ, a prerogative writ, extremely narrow in scope and operation, by which a superior court, having appellate and supervisory jurisdiction over an inferior court or tribunal possessing judicial or quasi-judicial power, may prevent such inferior court or tribunal from exceeding jurisdiction or usurping jurisdiction over matters not within its jurisdiction.
... .
Prohibition lies to prevent an inferior tribunal from acting in excess of jurisdiction but not to prevent an erroneous exercise of jurisdiction.
... .
Abuse of discretion by the inferior tribunal acting within its jurisdiction is not a matter to be determined by prohibition. State v. Hunt, 70 So.2d 301 (Fla. 1954), State ex rel. Jacksonville Ice & Cold Storage Co. v. Gray et al., 130 Fla. 359, 177 So. 849 (1937). If the existence of jurisdiction depends on controverted facts which the inferior court has the jurisdiction to determine, and the court errs in the exercise thereof, prohibition is not available. State ex rel. Park v. H.T. Poindexter & Sons Merchandise Co., 149 Fla. 765, 7 So.2d 452 (1941), Burkhart v. Circuit Court of Eleventh Judicial Circuit [146 Fla. 457, 1 So.2d 872], supra, State ex rel. Schwarz v. Heffernan, 142 Fla. 137, 194 So. 313 (1940), State v. Drumright, 116 Fla. 496, 156 So. 721 (1934).
The suggestion for writ of prohibition must affirmatively show lack of jurisdiction in the lower court. Department of Public Safety v. Koonce, 147 Fla. 616, 3 So.2d 331 (1941), State v. Rowe, 104 So.2d 134 (Fla. 1st DCA 1958).
In Garrett v. Johnson, 112 Fla. 112, 113, 150 So. 239, 239 (1933), the court said of the writ of mandamus:
Mandamus is a remedy correlative to that of prohibition as a means of testing jurisdiction in pending cases.
If in this case prohibition would lie to restrain jurisdiction had the order been the reverse of what it was, that is to say, had the circuit court's order been that the cause should not be dismissed because the court did have jurisdiction, then mandamus as a corresponding remedy for a contrary order will lie to test the correctness of the order that was made, holding that the circuit court did not have jurisdiction, since both mandamus and prohibition are remedies available in an appellate court of superior jurisdiction to control and supervise the exercise of jurisdiction by courts having final appellate jurisdiction to decide the jurisdictional questions involved.
In State ex rel. Allen v. Rose, 123 Fla. 544, 167 So. 21 (1936), the parameters of the writ were carefully and fully explored. The court explained:
In one of our recent cases on this subject, State ex rel. Board of Commissioners v. Helseth et al., 104 Fla. 208, 140 So. 655, 660, Mr. Justice Davis, speaking for this court, said: "A writ of mandamus is issued only to require the performance of a plain official duty on the part of respondents. It is issued to require the person *169 to whom it is directed to perform some act which the law enjoins as a duty, and it confers no power and creates no duty of itself." And in State v. Richards, 50 Fla. 284, 39 So. 152, this court held that mandamus lies to compel the performance of a ministerial duty, where such duty does not involve the exercise of discretion or judgment by the officer, and the relator has a clear legal right to have such duty performed... . Where the duty is discretionary, mandamus does not lie.
... .
Undoubtedly, as a general rule, mandamus is a remedy to command the performance of a ministerial act which the relator has the right to demand and which it is the plain official duty of the respondent to perform... .
Rights and remedies are so closely interwoven in the law that it becomes necessary to clearness of thought and the efficiency of judicial procedure to preserve as distinctly as possible the lines of demarcation between the different forms of remedies. Rights are more important than remedies and substantive law is more important than adjective law. But both are important. Remedies are a means to an end. The end is the efficient ascertainment and administration of justice under the law. But this highly desirable end can be best reached when the proper means to arrive at it are adopted. (citations omitted).
Id. 167 So. at 23-24.
By supreme court fiat, then, violation of the constitutional speedy trial rights of an accused divests the trial court of jurisdiction to proceed with adjudication and renders appropriate the use of extraordinary writs. Neither logic nor precedent dictate that the same result should follow from a violation of the procedural speedy trial rule. It is indeed seldom that the legal issue of whether or not there has been a violation of the speedy trial rule comes to the appellate court unencumbered by issues of fact. Were it otherwise, the trial court would most likely have put the issue properly to rest in the first instance. An application for these extraordinary remedies, then, has its genesis in an error, either of fact or law or both, by the trial court. Further confusing the issue may be controversy concerning the date the speedy trial period began to run, what crimes arose out of the single criminal episode for which the accused was taken into custody, whether custody resulted from different criminal activity or occurred in a different jurisdiction, whether the accused was continuously available for trial, whether there was a defense continuance or whether a continuance was properly chargeable to the defense, whether there exist facts constituting a waiver and other such factors. Under these circumstances we are disinclined to view speedy trial rule cases as involving simply a ministerial function which the accused has the right to demand and which it is the plain (and simple?) official duty of the trial court to perform. We do not comprehend that the ends of justice require that the trial court be temporarily divested of jurisdiction mid-proceedings in order that an appellate court may consider whether the mere passage of time has permanently ousted the court of its jurisdiction in the matter.
It is also clear that the 180 day speedy trial rule period is not co-extensive with the constitutional period. The latter is measured by tests of reasonableness and prejudice. Once the speedy trial rule has been waived it is supplanted by the constitutional speedy trial period. This latter is not a fixed period of time but is, rather, a reasonable time which is necessarily longer than 180 days. Butterworth v. Fluellen, 389 So.2d 968 (Fla. 1980).
Such a distinction did not exist between the constitutional right and the speedy trial requirement imposed by the legislature in the form of the statute which was the precursor of the speedy trial rule. The statute required that a demand for speedy trial (a positive, thoughtful action by the accused) be filed with the trial court. Violation then occurred only after three full terms of court had passed without bringing the defendant *170 to trial. It was therefore appropriate to indicate, as did our supreme court, that:
While the statutory scheme was supplementary to the speedy trial right guaranteed by Article I, Section 16, Florida Constitution, it was nonetheless a "legislative determination of the maximum delay in the trial which may be imposed * * * where such delay is brought about without any fault or affirmative action on the part of the accused * * *" Feger v. Fish, 106 Fla. 564, 143 So. 605 (Fla. 1932).
State ex rel. Atwood v. Baker, 250 So.2d 869, 871 (Fla. 1971). We conclude that both the statute and the constitution implicate the very jurisdiction of the court to proceed. We are not persuaded that the speedy trial rule was intended to have the same implications. This is therefore not, in our view, a distinction without a (legal) difference.
Supreme court opinions treating prohibition and mandamus in the area of speedy trial impel us to the same conclusion. The cases which have been brought to our attention ultimately and inevitably refer to the constitutional right to speedy trial.
Thus the court said, in Feger v. Fish, 106 Fla. 564, 566, 143 So. 605, 606 (1932) "When a court by its affirmative action denies to the accused the rights guaranteed to him under section 11 of the Declaration of Rights, such action on the part of the court is in excess of its jurisdiction and, therefore, may be reached by prohibition." Again, by way of dicta, in Woodward v. Petteway, 123 Fla. 892, 893, 168 So. 806, 806 (1935), the court advised:
To protect constitutional rights from invasion, or even partial impairment, appropriate judicial writs, prerogative and otherwise, may be availed of by an injured party. Thus the use of the writ of prohibition has been countenanced to enforce the provision of section 11 of the Declaration of Rights, aforesaid, where it was alleged and shown that a "speedy" trial was being denied petitioner... . (citation omitted).
The court, in Dickoff v. Dewell, 152 Fla. 240, 241, 9 So.2d 804, 805 (1942), stated: "Furthermore, when it comes to the matter of safeguarding the constitutional rights of the individual the courts look to the substance rather than the technical forms of procedure taken to invoke the protection of the law."
Quoting this language from Dickoff v. Dewell, the court, in Wincor v. Turner, 215 So.2d 3, 6 (Fla. 1968), explained the relationship, one to another, of the available remedies for violation of speedy trial rights:

"Furthermore, when it comes to the matter of safeguarding the constitutional rights of the individual the courts look to the substance rather than the technical forms of procedure taken to invoke the protection of the law." The emphasized statement is particularly appropriate here when we consider this technical objection of the State to this action of the accused to enforce his constitutional right to a speedy trial under the provisions of a long-standing statute of this State designed to insure the performance of that duty. Modern rules of procedure are intended to eliminate technicalities and to simplify the administration of justice. This Court has often referred to prohibition as being the counterpart of mandamus. In Curtis, etc. v. Albritton, 101 Fla. 853, 132 So. 677, this Court said: "The writ of prohibition is the counterpart of mandamus in the manner in which it operates, being negative while mandamus is positive in its commands. Spelling on Injunctions and other Extraordinary Legal Remedies (2d Ed.) sec. 1718." Judge Cross, in the recent mandamus case of Gossett v. Hanlon, supra, where identical relief was granted petitioner, very appropriately observed that "In reading section 915.01, supra, in pari materia it is obvious that section 915.01(1) states clearly that relief provided the accused is to be granted by affirmative action of the court rather than by automatic operation of law." (E.S.) While, if the accused elected, he would have the right to resort to prohibition as was done in Dickoff v. Dewell, supra, and other cases to prohibit further proceedings, he has the right, if he elects to do so, to proceed in mandamus *171 to compel the dismissal of such action when the statute has not been complied with. We think from the standpoint of the accused and the orderly administration of justice the latter is a more satisfactory and appropriate method of proceeding because if the accused has complied with the statute, the suit then is dismissed, a final judgment is entered and the case is closed.
Pena v. Schultz, 245 So.2d 49 (Fla. 1971), was clearly and expressly dealing with a constitutional violation. The court in that case stated, in approving use of the writ:
This discharge of Pena did not accrue under the provisions of F.S. Sections 915.01 and 915.02, F.S.A., prescribing certain statutory requisites guaranteeing a speedy trial. Instead, it comes directly under the constitutional provision guaranteeing a speedy trial. Section 16, Declaration of Rights, State Constitution, F.S.A. Judge Schultz in his order of October 13, 1970, agreed with Pena that the State's failure to proceed with the prosecution because of its failure to have its witnesses present was sufficient ground to dismiss the case and discharge the defendant.
Id. at 50.
In each of these cases, then, the language and the rationale implicate constitutional guarantees.
We recognize that this view does not have universal acceptance and that supreme court precedents have received a different interpretation by at least two of our sister courts. Thus the Third District Court of Appeal, in a well-reasoned and persuasive opinion, V.C. v. Ferguson, supra, has suggested that the case of State ex rel. Soodhalter v. Baker, 248 So.2d 468 (Fla. 1971), is significant for "the holding that there is no ... jurisdictional impediment in the district court of appeal, and that in those courts prohibition is the proper remedy for asserted speedy trial rule violations." Ferguson, ___ So.2d at ___. The important term in the quoted sentence is "speedy trial rule." Soodhalter dealt with a violation of Subsection 915.01, Florida Statutes (1969), the speedy trial statute. We reemphasize our view that the rationale explaining cases dealing with the former statutory requirement has little viability and should have little credibility in the area of the procedural speedy trial rule.
The third district also has suggested in V.C. that Sherrod totally overlooks the proposition gleaned from State ex rel. Atwood v. Baker, supra, that "in any event and in any court, mandamus lies to remedy a speedy trial violation." V.C., supra, footnote 4. We respectfully suggest that Atwood, like Soodhalter, involved a violation of the speedy trial statute and thus lends little precedential value to our analysis, based, as it is, on the premise that statute violations and rule violations implicate somewhat different considerations and should be redressed by different remedies.
The thesis for the second or procedural basis for the holding in Sherrod was never judicial economy. (Notwithstanding V.C., supra, to the contrary.) The occasional meritorious application for redress of a speedy trial rule violation no doubt saves the defendant, the prosecution and the trial court the time and expense of a trial. On the other side of the scale must be placed (1) the cost in time and expense for a three judge panel of the appellate court to give due consideration to all such applications, however numerous and however frivolous and (2) the disruption of the orderly proceedings at the trial court level which occurs when the appellate panel issues an order to show cause automatically staying those proceedings. For a vivid, albeit somewhat unique and therefore perhaps not fairly representative, account of the adverse consequences of such an application, see Addison v. Brown, 413 So.2d 1240 (Fla. 5th DCA 1982). Such a debate, however, like the question of how many angels can dance on the head of a common pin, is better left to the statisticians and academicians.
It is our considered judgment that the course of justice is better served, and its administration less fragmented, by following the rule that extraordinary remedies are not available mid-proceedings to test *172 whether a violation of the procedural speedy trial rule has occurred.
We do not mean to suggest, however, that violations of the speedy trial rule may be perpetrated with impunity. Such violations will inevitably result in discharge of the criminal defendant at the appropriate time after all factual questions have been put to rest. This, coupled with the fact that the period established by the rule may be extended for various reasons and may be waived pre-trial, during trial or post-trial, compel us to conclude that alleged violations of the procedural rule, as we have already indicated, must of necessity await orderly disposition of all of the issues by the trier of fact before being presented to the law court for review. The defendant who truly seeks a speedy trial rather than speedy release will ultimately be better served by adherence to such a procedure, eliminating, as it does, the disruptive and time consuming process of making application for extraordinary relief on the eve of trial, thus delaying trial, the very evil sought to be remedied.
We continue to adhere to the view graphically but succinctly stated for the Supreme Court of the United States by Mr. Justice Blackmun in United States v. Mac Donald, 435 U.S. 850, 863, 98 S.Ct. 1547, 1554, 56 L.Ed.2d 18, 29 (1978):
In sum, we decline to exacerbate pretrial delay by intruding upon accepted principles of finality to allow a defendant whose speedy trial motion has been denied before trial to obtain interlocutory appellate review.
Accordingly, the petition for writ of prohibition is denied on its merits and on the additional ground that prohibition does not lie.
PETITION DENIED.
DOWNEY and DELL, JJ., concur.