447 So.2d 903 (1984)
Edward GOLDSTEIN, Appellant,
v.
STATE of Florida, Appellee.
No. 82-381.
District Court of Appeal of Florida, Fourth District.
February 29, 1984.
Rehearing Denied April 11, 1984.
*904 Joel Hirschhorn of Joel Hirschhorn, P.A., Miami, for appellant.
Jim Smith, Atty. Gen., Tallahassee and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
HURLEY, Judge.
Edward Goldstein was convicted and sentenced to life imprisonment for the first degree murder of his recently divorced wife, Pamela, and their young son, Jeffrey. Mr. Goldstein asserts several errors on appeal, three of which are discussed below, but none of which requires reversal.
The first error concerns an alleged speedy trial violation. The defendant was charged by indictment with two counts of first degree murder. Both counts alleged that the murders occurred on September 26, 1977. While these charges were pending, the defendant moved for and received a continuance. Thereafter, the state filed a second, two-count indictment which mirrored the earlier charges except that it altered the murder date to September 25, 1977. The defendant now argues that the trial court erred in finding that the defense continuance, which was granted while the first indictment was extant, constituted a continuing waiver of his rights under the speedy trial rule.[1] Basically, the defendant contends that the second indictment contained new charges which were sufficiently dissimilar to the original so as to negate the legal effect of the defense continuance. We do not agree.
Butterworth v. Fluellen, 389 So.2d 968, 970 (Fla. 1980) restated the proposition that "the granting of the defendant's motion [for a continuance] does waive the 180-day provision [of the speedy trial rule]... ." The question presented here is whether such a waiver remains in effect when the state elects to file a second, amended information or indictment. We addressed this question in Gallego v. Purdy, 415 So.2d 166, 167 (Fla. 4th DCA 1982), and held that "[a] defense continuance constitutes a specific waiver of the speedy trial rule (or, more properly, an estoppel precluding reliance on the rule) as to all charges which emanate from a single criminal episode." In Gallego, after a defense continuance, the state filed an amended information which increased the amount of cocaine alleged to have been possessed by the defendant. Since it was undisputed that all of the cocaine came from the same criminal episode which formed the basis of the initial charge, we held that the filing of the amended information did not vitiate the existing waiver. The same principle applies here. It is patently obvious that the charges in the first and second indictments emanate from the same criminal episode. Consequently, we hold that the defendant's waiver of rights under the speedy trial rule continued in force and effect under both indictments. See State v. DeSimone, 386 So.2d 283 (Fla. 4th DCA 1980).
Next, the defendant asserts that the trial court improperly admitted opinion testimony by a state psychiatrist. Prior to trial the defendant had been involuntarily committed to the South Florida State Hospital, an institution for the treatment of mental illness. While there, he confided in a fellow patient by the name of William Gunz. *905 According to Gunz, the defendant asked for information on how to simulate mental illness. Also, Gunz said that the defendant detailed the planning process that led to the murder of his wife and child. When the case came to trial, the state called Gunz to testify about the foregoing since it bore on the issue of premeditation. During his testimony, Gunz related that he too had been charged with a crime, adjudicated incompetent and involuntarily committed to the state hospital as a paranoid schizophrenic.
After Gunz testified, the state called Dr. Robert Messer, a staff psychiatrist at the South Florida State Hospital. Without objection, Dr. Messer testified that he had examined William Gunz on two prior occasions and had determined that Gunz's mental illness was in remission. The defense objected at this point and claimed that Dr. Messer's testimony invaded the province of the jury. After extensive discussion, the court overruled the objection and permitted the following:
Q. [Prosecutor] All right. On March 26, 1981, did you find his illness in remission?
A. [Dr. Messer] That is correct, yes, sir. His illness was in remission, both on January 6, 1981, and on March 26, 1981.
Q. And, sir, on those dates, did you find him  well, let's say as of March 26, 1981, did you find him competent to be a witness in this case?
A. Yes, I did.
Q. He would know the meaning and nature of testimony and an oath, the nature of an oath, the meaning of testimony?
A. Yes, he would know what it means to take an oath, and he would be able to appreciate statements that were made to him, would be able to hold the statements in his mind correctly and be able to reproduce them when required to do so.
The defense cross-examined Dr. Messer about Gunz's mental illness and, drawing to a close, posed the following questions:
Q. [Defense Counsel] All right, Doctor. Now, one more final question. When you had told this Court and jury that Mr. Gunz was declared incompetent and then you felt that he would be competent to testify, now, when you are talking about his competency to testify, you are not talking about his credibility, are you, sir?
A. [Dr. Messer] No, sir.
Q. Just his competency to testify?
A. Specific competency to testify. That is all I talked about.
Q. All right.
A. Yes, sir.
The defendant argues that Dr. Messer's testimony improperly bolstered Gunz's credibility and thereby invaded the province of the jury. We disagree. First, the doctor limited his opinion testimony to the issue of mental competency and expressly noted that it was separate and distinct from credibility. Second, Gunz's mental competency was very much in issue. Of necessity, Gunz had to relate his own background to explain his association with the defendant. The jury, therefore, was confronted with the task of evaluating a witness who testified about conversations which occurred after he had been judicially declared incompetent to stand trial, when he was involuntarily committed to a state mental institution and when he had been diagnosed as a paranoid schizophrenic. Whether the witness had the mental capacity to perceive accurately the conversations about which he was testifying was a question of obvious concern to the jury. In our view, the trial court had ample discretion to admit evidence which might assist the jury to satisfy that legitimate concern. In reaching this conclusion, we recognize that the question of a witness's competency is for the trial court's resolution. See sections 90.105 and 90.603(2), Florida Statutes (1981). Yet, we also note that section 90.702, Florida Statutes (1981), empowers the trial court to admit expert testimony "[i]f scientific ... or other specialized knowledge *906 will assist the trier of fact in understanding the evidence or in determining a fact in issue... ." Furthermore, Johnson v. State, 393 So.2d 1069, 1072 (Fla. 1980), holds that "[t]he trial court has broad discretion in determining the range of subjects on which an expert witness may be allowed to testify, and, unless there is a clear showing of error, its decision will not be disturbed on appeal."
We therefore cannot accept the defendant's argument that this case is controlled by the holding in Knight v. State, 97 So.2d 115 (Fla. 1957). There the court condemned the practice of allowing a state psychiatrist to testify that he had given "truth serum" to a witness and, therefore, that the witness was more likely to tell the truth. In Knight the psychiatrist gave opinion testimony on the veracity of a witness, whereas in this case Dr. Messer carefully underscored the distinction between competency and credibility and, then, limited his testimony to the former. We conclude that under the facts of this case, the defendant has failed to demonstrate that the admission of Dr. Messer's testimony constitutes a clear showing of error.
Finally, the defendant claims that the trial court violated the "Williams rule"[2] by admitting evidence that the defendant had threatened his ex-wife on a prior occasion. Thelma Shenton, a friend of the defendant's ex-wife, testified that in early 1977, Pamela Goldstein called and asked her to come to the Goldstein's home. Ms. Shenton complied and found that Mrs. Goldstein, who was an alcoholic, had been drinking. After some conversation, Mrs. Goldstein passed out. When Mr. Goldstein returned home, he saw his wife lying on the kitchen floor and said, "Oh, no, not again." Then he picked up a knife and said, "I ought to kill her. She would be better off dead."
The Williams rule is now codified in section 90.404(2)(a), Florida Statutes (1981): "[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, ... intent ... or absence of mistake... ." Applying the statute to this case, we hold that the prior act of aggressive conduct and the accompanying verbal statements were admissible because they were relevant to the issue of intent which is an essential element of premeditated murder. See Williams v. State, 344 So.2d 927 (Fla. 3d DCA 1977); Hutchinson v. State, 102 So.2d 44 (Fla. 2d DCA 1958).
We have carefully reviewed each of the errors asserted on appeal and find that none constitutes reversible error. Therefore, the judgments of conviction and sentences are
AFFIRMED.
ANSTEAD, C.J., and WESSEL, JOHN D., Associate Judge, concur.
NOTES
[1] Rule 3.191, Fla.R.Crim.P.
[2] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).