790 So.2d 1177 (2001)
James SIMMONS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-2408.
District Court of Appeal of Florida, Third District.
July 18, 2001.
Stuart R. Mishkin, Miami, for appellant.
Robert A. Butterworth, Attorney General, and M. Rebecca Springer, Assistant Attorney General, for appellee.
Before LEVY, GREEN and SORONDO, JJ.
SORONDO, J.
James Simmons, defendant, appeals his convictions and sentence. Defendant was charged by an Amended Information with *1178 aggravated battery, aggravated assault with a deadly weapon, armed kidnaping, and battery of Latricia Nelson, his girlfriend, for an incident that occurred on June 11, 1998. In a timely manner, the state filed its initial Notice of Intent to Rely on Evidence of Other Crimes, Wrongs or Acts. In this notice, the state described its intent to seek the admission of evidence of a battery committed by defendant upon Ms. Nelson on August 9, 1997. The state subsequently filed its Supplemental Notice of Intent to Rely on Evidence of Other Crimes Wrongs or Acts. In this second notice, the state announced its intent to seek the admission of an aggravated assault with a firearm against defendant's former girlfriend, Estelle Carter, in January of 1991.
Prior to trial, the defense objected to the Williams[1] rule evidence. The state argued that the evidence was relevant to show intent and lack of mistake. The state further argued that the evidence regarding Estelle Carter would further serve to rebut defendant's anticipated claim of self-defense at trial.
The trial court concluded that the 1997 incident involving Ms. Nelson was relevant, not under Williams rule, but because it was inextricably intertwined in a domestic violence incident.[2] The court ruled it would not permit the Williams rule evidence regarding the 1991 incident with Estelle Carter because it was irrelevant. The court indicated it would revisit the issue during trial if necessary.
The State's first three witnesses testified about the August 1997 incident involving the same victim as in the present case.[3] Ms. Nelson testified that in August 1997, defendant beat her in the face. She then testified that on the day of the charged *1179 offense defendant arrived home from work in a loud and angry mood. A verbal altercation ensued and escalated to the point that defendant hit her in the left eye. She also testified that defendant choked, beat and pushed her.
At some point during the struggle, defendant retrieved a shotgun from beneath the mattress, held it to her head and then hit her on the head with the shotgun. She further testified that she was unable to get away because defendant continued to push her, and that she was unable to run because she had previously suffered injuries to her leg in an unrelated accident.
The state called other witnesses who corroborated the existence of injuries suffered by the victim and the presence of firearms in the house.
Defendant took the witness stand on his own behalf. He testified that on the day in question, the victim was in his apartment when he got home from work and she threatened that if she caught him with another woman, she would kill him. He further testified that the alleged victim had, in fact, been the aggressor and that he had acted only in self-defense. On cross-examination, the prosecutor explored the defendant's claim that he was the peaceful victim of Ms. Nelson's aggression. Defendant told the prosecutor that he believed that domestic violence was wrong and that he had never been violent with Ms. Nelson or anyone else.[4]
Before presenting its rebuttal case, the state asked the court to reverse its pretrial ruling excluding the 1991 incident of defendant's domestic violence against Estelle Carter. The state argued that defendant's testimony on both direct and cross-examination opened the door to the same. The trial court agreed.
On rebuttal, the State called Estelle Carter. She testified that she used to be the defendant's girlfriend and that they had lived together. She further testified that defendant used his fists and a weapon to beat her about the face and head during their relationship.
The jury returned a verdict of not guilty as to the aggravated battery, but guilty as to aggravated assault with a deadly weapon, kidnaping and battery. The trial court sentenced the defendant to imprisonment in state prison for ten years with a three year mandatory minimum term as to the aggravated assault with a deadly weapon; five years with a three year mandatory minimum as to the kidnaping; and 424 days in Dade County Jail (credit for time served) as to the battery. Sentences on each count were to run concurrent with each other. This appeal follows.

I.
Defendant raises four issues in this appeal, three of which are worthy of discussion. First, he argues that the trial court erred by admitting the Williams rule evidence. We disagree. In response to the state's notice of intent to rely on evidence of other crimes, defendant recorded what appears to have been an ore tenus motion in limine to exclude all such evidence. During argument on this motion, defense counsel conceded that defendant would assert a claim of self-defense at trial. The state responded that it sought to introduce the evidence to prove defendant's intent to injure, and, in the case of the kidnaping charge, to terrorize the alleged victim. The court ruled that it would admit evidence of the battery committed upon the alleged victim ten months earlier, but granted defendant's motion to *1180 exclude any mention of the crimes committed against alleged victim Carter in 1991.[5]
We agree with the trial judge that evidence of defendant's prior violent behavior towards Ms. Nelson was relevant to prove his intent to commit the crimes of aggravated battery, aggravated assault and battery. It was also relevant to prove his intent to terrorize her as charged in the kidnaping count of the Information. Accordingly, this evidence was admissible under section 90.404(2)(a), Florida Statutes (1997). See King v. State, 436 So.2d 50 (Fla.1983); Brown v. State, 611 So.2d 540 (Fla. 3d DCA 1992); Worden v. State, 603 So.2d 581 (Fla. 2d DCA 1992); State v. Everette, 532 So.2d 1124 (Fla. 3d DCA 1988); Hyer v. State, 462 So.2d 488 (Fla. 2d DCA 1984); Goldstein v. State, 447 So.2d 903 (Fla. 4th DCA 1984).
During his direct examination defendant testified that he was the true victim in the present case. He stated that on the day in question the victim had come at him with a gun; that she violently pistol whipped him and that she had repeatedly threatened him with violence in the past. He said that as a result of her past violent behavior he had been forced to secure restraining orders against her. On cross-examination he added that he objected to domestic violence, denied ever being violent with Ms. Nelson or anyone else and generally portrayed himself as the peaceful victim of a very jealous and aggressive woman.
This testimony opened the door to the second instance of domestic violence, which had been previously excluded but which was ultimately correctly allowed into evidence to impeach defendant's untruthful testimony during both his direct and cross-examination. See Bozeman v. State, 698 So.2d 629, 630-31 (Fla. 4th DCA 1997)("To open the door to evidence of prior bad acts, the defense must first offer misleading testimony or make a specific factual assertion which the state has the right to correct so that the jury will not be misled."); Allred v. State, 642 So.2d 650 (Fla. 1st DCA 1994)(by testifying that he lacked a violent propensity and asserting that he had never hit a woman, defendant opened the door to rebuttal evidence that he had previously physically assaulted his former wife and a girlfriend); Fletcher v. State, 619 So.2d 333 (Fla. 1st DCA 1993)(where defendant testified during his direct examination that he had never pointed a gun at anybody and that he was a responsible user of firearms, the state was properly allowed to introduce evidence of an episode wherein the defendant used a firearm recklessly).
We find no abuse of discretion in the trial judge's evidentiary rulings.

II.
Next, defendant argues that the trial court erred in reversing its prior ruling granting his motion for judgment of acquittal as to the charge of kidnaping in violation of the double jeopardy clause of the Constitution of the United States and the State of Florida. We disagree.
At the conclusion of the state's case, defense counsel moved for a judgment of acquittal on all counts. As concerns the kidnaping count, counsel argued that any confinement of the victim was incidental to the commission of the other crimes and that the state had therefore failed to establish a prima facie case. The prosecutor responded that she had charged the offense alternatively under the "confined *1181 with intent to terrorize" language of the statute.[6] The court granted the defendant's motion and reduced the charge of kidnaping to false imprisonment.
During the same general conversation,[7] the prosecutor returned to the issue of the kidnaping charge and handed the court a copy of this Court's decision in Waddell v. State, 696 So.2d 1229 (Fla. 3d DCA 1997). The prosecutor then briefly explains the holding of Waddell, and the court announces that it would "rule on it after we finish the testimony."
After the defense rested, the court returned to the issue and advised both sides that she had read Waddell and felt compelled to revisit her initial ruling. She asked both sides to review the case overnight and to conduct whatever other research was appropriate. She concluded by saying: "O.K. [defense counsel], I will give you overnight to digest the information. I'm thinking of reversing my ruling on the JOA, based on the cases that were provided to me."
When trial resumed the next day, the court immediately addressed the kidnaping issue. After hearing from the prosecutor, (defense counsel declined the opportunity to make argument), the court reversed its prior ruling and sent the kidnaping charge to the jury.
In Francis v. State, 736 So.2d 97 (Fla. 4th DCA 1999), the Fourth District Court of Appeal addressed the identical issue presented here. There, the trial court had orally opined that the prosecution had not proven its case and granted the defendant's motion for judgment of acquittal. The court then gave the prosecution until the following day to research the issue. The next day the court receded from its ruling and denied the motion. The defendant made the same double jeopardy claim made by defendant herein. The appellate court held:
[Defendant] argues that the court's receding from its initial oral granting of her motion for judgment of acquittal violated double jeopardy. We disagree. Our review of the record reflects that when the court initially granted the motion, the hearing had not come to an end. Rather, discussions between the court and counsel for both sides regarding the motion were still ongoing up to and after the point the court granted the motion. At the conclusion of the day's proceedings, it was clear the court was giving the prosecutor overnight to gather additional case law, and would continue the hearing the next day. Because the court reversed itself before the hearing came to an end, we hold that its *1182 initial ruling was not final and, thus, that double jeopardy was not triggered.
Id. at 99. The exact situation exists in the present case. At the time the state provided the court with a copy of this Court's decision in Waddell, the hearing on the motion for judgment of acquittal was ongoing. Indeed, the trial judge specifically advised defense counsel that she would not require him to offer his final argument on the matter until the next day, in order to give him an opportunity to thoroughly research the issue so he could better respond to the case law provided by the state. We agree with the holding and reasoning of Francis and consequently reject defendant's double jeopardy argument.

III.
Defendant's last claim is meritorious in part. The final judgment of conviction and sentence shows a sentence of ten years in prison with a three year minimum mandatory as to count two, aggravated assault with a firearm, five years in prison with a three year minimum mandatory as to count three, armed kidnaping, and 424 days of time served for count four, battery. The transcript of the sentencing hearing clearly establishes that the court imposed the five year sentence on the aggravated assault charge and the ten year sentence on the kidnaping charge. Accordingly, we reject that part of defendant's argument which suggests that the sentence imposed on the aggravated assault charge was illegal because it exceeded the statutory maximum of five years. We remand this case to the trial court for correction of the final judgment so that it conforms to the oral pronouncement of the trial judge. See Baldwin v. State, 684 So.2d 254 (Fla. 3d DCA 1996).
Defendant correctly argues that his sentence of 424 days time served for the crime of simple battery, a first degree misdemeanor, exceeds the statutory maximum. On remand, the sentence on this charge will be reduced to 364 days in the County jail. Defendant does not need to be present for either of these corrections.
Affirmed in part; reversed in part, and remanded with instructions.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] The trial court apparently concluded that because both the charged offense and the collateral crime involved "domestic violence," they were inextricably intertwined. This conclusion was incorrect. Evidence of an uncharged crime is inextricably intertwined with the charged offense, and therefore admissible independent of the provisions of section 90.404(2)(a) and (b), Florida Statutes, "where it is impossible to give a complete or intelligent account of the crime charged without referring to the other crime." Nickels v. State, 90 Fla. 659, 106 So. 479, 488 (1925). This is not the case here. The crime charged was committed in June of 1998, and is capable of being proved without reference to the prior incident. The state advised the court that its purpose for introducing the prior crime was to establish defendant's criminal intent in light of his claim that he had acted in self-defense during the events that led to the present charges.

Regardless of the reason articulated by the trial court for its ruling, under the so-called "tipsy coachman" doctrine, "in some circumstances, even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling." Dade County School Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla. 1999).
[3] The state argues that defendant has failed to preserve the Williams rule issue with a contemporary objection specifically identifying the grounds relied upon. The state's first witness was Crime Scene Technician Arnold Yen. Mr. Yen testified that he responded to the crime scene in August 1997 and took a photograph of the victim. When the state offered the photograph into evidence, defense counsel objected without stating specific grounds. In response to his objection, however, the trial judge read the Florida Supreme Court's Standard Jury Instruction regarding Williams rule evidence. It is therefore clear that the trial judge understood the exact nature of the objection.

We also note that during the testimony of the victim, and the second Williams rule witness, defendant similarly objected and again either requested the reading of the instruction, or the judge read the instruction without being asked. Accordingly, we conclude that the issue was properly preserved.
[4] The defense also called defendant's uncle and mother to the witness stand. Their testimony, however, has no effect on the issues discussed herein.
[5] We note that, as concerns this 1991 offense, the issue of remoteness was not raised below and was consequently waived.
[6] Section 787.01, Florida Statutes (1997), reads as follows:

(1)(a) The term "kidnaping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:
. . . .
2. Commit or facilitate commission of any felony.
3. Inflict bodily harm upon or to terrorize the victim or another person.
The relevant language of the amended Information charged that defendant "did then and there forcibly, secretly, or by threat, confine, abduct or imprison another person, to-wit: Latricia Nelson against that person's will, with the intent to commit or facilitate the commission of any felony, to-wit: AGGRAVATED BATTERY AND/OR AGGRAVATED ASSAULT and/or inflict bodily harm upon or to terrorize the victim or any other person..." (Emphasis added).
[7] The court granted defendant's motion for judgment of acquittal on page 409 of the transcript. On page 413, and what appears to be nothing more than moments later, the prosecutor asked the court to revisit her ruling.