403 So.2d 1063 (1981)
James Robert JACKSON, Appellant,
v.
STATE of Florida, Appellee.
No. 79-1747.
District Court of Appeal of Florida, Fourth District.
September 9, 1981.
Rehearing Denied October 14, 1981.
*1064 Richard L. Jorandby, Public Defender, and Allen J. DeWeese, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Joy B. Shearer, Asst. Atty. Gen., West Palm Beach, for appellee.
GLICKSTEIN, Judge.
Appellant was indicted for and convicted of first degree murder and robbery. The trial court sentenced appellant to life imprisonment for the murder conviction and withheld sentence for the robbery conviction. We affirm.
On the morning of December 2, 1978, appellant, along with Robert Lee Washington, James Brown, and Raymond Hillery, were employed to pick fruit. Washington testified that when they arrived at the grove, Hillery asked to see a sawed-off shotgun that was produced by appellant from the trunk of his car. The four decided not to work and left the grove in appellant's car. While in the car, Hillery said he knew of a man in Vero Beach who would be in his office with plenty of money. Brown asked appellant if Washington, Hillery and he could use appellant's car for the robbery, to which appellant agreed. Brown, Hillery and Washington shortly thereafter took appellant's car and shotgun to Vero Beach where they affected the planned robbery of W.C. Graves. Washington testified that he was given $50 at Hillery's house after the robbery and the remainder of the money was divided three ways among appellant, Brown and Hillery. Brown then said to the others that they make one more robbery that night, then drive to the Carolinas, to which Jackson replied, "I'm going to ride too."
That night at the 33rd Street Grocery, the owner of the store was killed by the blast of a sawed-off shotgun and his cash register was emptied. Two black men were seen in the store shortly before the shooting. After appellant's arrest he gave three statements to the police. Appellant denied, in one of the statements, any knowledge of the robberies and maintained the denial at the trial. Later statements contain admissions that he drove his car with Brown and Hillery as passengers, knowing that they were going to rob a store; that he parked his car three or four houses from a store; that he waited until Brown and Hillery ran back to the car, telling him to drive off, which he did; that he knew they had *1065 robbed the store; that en route Brown said, "You didn't have to kill that man," to which Hillery replied that he did not mean to do it and that the gun just went off; that Hillery said he had left the shotgun in the store; and that Brown showed him a pistol which Jackson believed had been taken from the store.
Jimmy Lee Washington testified that about 9:30 that same night at his home he saw appellant and Brown with money, which surprised him. When a policeman arrived at the home looking for Hillery, appellant and Brown panicked and said they were going to North Carolina.
Appellant and Brown were arrested in Jacksonville on the following day when a state trooper stopped them because of the license tag on appellant's car. Corporal Sutherland, who was one of the arresting officers, testified that he found a revolver in the car. This weapon was identified as being kept by the victim under the counter in his grocery store.
Appellant first argues that he was entitled to a judgment of acquittal because he was not personally present at the time of the homicide. He relies on Adams v. State, 341 So.2d 765 (Fla. 1976), and Hite v. State, 364 So.2d 771 (Fla.2d DCA 1978), cert. denied, 372 So.2d 471 (Fla. 1979), both of which use the term "personally present." However, from the foregoing testimony it is apparent that appellant was part of the original discussion which led to the robbery of the grocery store; that he furnished the weapon used in the homicide; and that he was the wheel man who provided Brown and Hillery with their means of flight from the scene by waiting in his car a very short distance from the store. Under the circumstances of this case, the following excerpt from Enmund v. State, 399 So.2d 1362, 1370 (Fla. 1981), demonstrates that appellant was constructively present and supports the verdict of first degree murder:
There was no direct evidence at trial that Earl Enmund was present at the back door of the Kersey home when the plan to rob the elderly couple led to their being murdered. J.B. Neal's account of what Sampson Armstrong told him did not include any reference to Enmund. Ida Jean Shaw testified to Enmund's absence that morning and his statements of his complicity. But the only evidence of the degree of his participation is the jury's likely inference that he was the person in the car by the side of the road near the scene of the crimes. The jury could have concluded that he was there, a few hundred feet away, waiting to help the robbers escape with the Kerseys' money. The evidence, therefore, was sufficient to find that the appellant was a principal of the second degree, constructively present aiding and abetting the commission of the crime of robbery. This conclusion supports the verdicts of murder in the first degree on the basis of the felony murder portion of section 782.04(1)(a).
See also Goodwin v. State, 405 So.2d 170 (Fla. 1981).
Appellant's second point is that the trial court erred in refusing to give two jury instructions requested by him.[1] The instruction on presence of defendant was submitted on authority of Adams v. State, supra, *1066 and Hite v. State, supra. Although not having the benefit of the supreme court's opinions in Enmund, supra, and Goodwin, supra, we think the trial court nonetheless properly denied this request. It is evident under Enmund and Goodwin that a jury instruction containing the words personally present would be an imprecise statement of the law. As for the denial of the requested instruction on second degree murder, we believe that the instructions as given were adequate.
Appellant further argues that it was error to admit evidence of the earlier robbery of Graves because appellant was not charged with and on trial for that robbery, but for a robbery and murder occurring later that same day. The test for admissibility of collateral offenses is relevancy, not necessity. Hall v. State, 403 So.2d 1321 (Fla. 1981); Ruffin v. State, 397 So.2d 277, 279 (Fla. 1981). The state initially has the burden, if evidence of a collateral crime is to be admitted, of offering proof of a connection between appellant and the collateral offense. See State v. Norris, 168 So.2d 541 (Fla. 1964). Sub judice, the state presented evidence that appellant loaned his car to the actual perpetrators of the collateral offense, knowing of their reason for borrowing the car. The state further showed that appellant furnished the weapon used and received a portion of the money taken during the collateral robbery. That the two robberies were part of one prolonged criminal episode is supported by the evidence. But for appellant's car and sawed-off shotgun, Brown, who initiated both robberies, would have been without the means to effect either one. Both crimes had taken place within hours of each other on the same day; and the second robbery was spawned while the money taken in the first was being counted. Accordingly, the evidence of the earlier robbery was admissible because it established the entire context out of which the criminal conduct arose. Hall, supra; Ruffin, supra; Smith v. State, 365 So.2d 704 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Appellant also contends that it was double jeopardy to convict him on the underlying felony of robbery in view of his conviction for felony murder. He relies on State v. Pinder, 375 So.2d 836 (Fla. 1979). Subsequent to the submission of briefs and to oral argument, the Florida Supreme Court held that an accused could be convicted of the underlying felony and of felony murder, but under Section 775.021(4), Florida Statutes (1979) could not be sentenced for the underlying felony, which was a necessarily included offense for the felony murder conviction. State v. Hegstrom, 401 So.2d 1343 (1981). Therefore, we affirm the convictions of both offenses.
AFFIRMED.
HERSEY, J., and RIVKIND, LEONARD, Associate Judge, concur.
NOTES
[1] The two requested instructions are:

PRESENCE OF DEFENDANT. You are instructed, that in order to find the Defendant to be guilty of Murder in the First Degree as charged in the Indictment, you must find from the evidence beyond a reasonable doubt that the Defendant either personally committed the killing as alleged in the indictment or be personally present, aiding and abetting the commission of the underlying felony, that is the Robbery alleged, when the killing occurs, in order to be guilty of Murder in the First Degree.
SECOND DEGREE MURDER. You are instructed that in applying the foregoing definition of Murder in the Second Degree, if the person who actually kills the alleged victim is a principal in the commission of the underlying felony, that is the Robbery, and not an innocent person, such as a bystander or law enforcement officer, then you cannot find that the Defendant is guilty of Murder in the Second Degree.