680 So.2d 581 (1996)
James HAMPTON, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 95-907, 95-882 and 95-884.
District Court of Appeal of Florida, Third District.
September 4, 1996.
As Corrected on Grant of Clarification October 16, 1996.
*582 Roy D. Wasson, Miami, for appellant.
Robert A. Butterworth, Attorney General and Angelica Zayas, Assistant Attorney General, for appellee.
*583 Before BARKDULL, LEVY and GREEN, JJ.
PER CURIAM.
On this consolidated appeal, James Hampton appeals his convictions and sentences entered in the following three cases: 94-7000B, 94-7638, and 94-30870. In case numbers 94-7000B and 94-7638, Hampton was convicted and sentenced pursuant to plea agreements. In case number 94-30870, Hampton was convicted of one count of possession of cocaine with the intent to sell after a jury trial and sentence pursuant thereto. We dismiss the appeal as to case numbers 94-7000B and 94-7638 for lack of jurisdiction and affirm Hampton's conviction and sentence imposed in 94-30870.

I. PLEA CASES
On this direct appeal, Hampton seeks to challenge his guilty pleas entered in case numbers 94-7000B and 94-7638 on the grounds that the court erroneously accepted his pleas without his expressed acknowledgment of guilt or acknowledgment that the pleas were in his best interests. As a result, Hampton argues that they must be set aside pursuant to Florida Rule of Criminal Procedure 3.172(d). The State correctly points out, however, that a defendant may not appeal from a judgment entered pursuant to a guilty or nolo contendere plea absent an express reservation of the right to appeal and which particularly identifies the particular point of law being reserved. § 924.06(3), Fla. Stat. (1993); Fla. R. App. P. 9.140(b)(1). The records before us do not reflect that Hampton reserved his right to attack his pleas entered in 94-7000B and 94-7638 on the ground being asserted on this appeal. Nor does it appear that Hampton's appeal qualifies as one of the narrow exceptions to Rule 9.140(b)(1) outlined in Robinson v. State, 373 So.2d 898, 902 (Fla.1979). Consequently, we have no jurisdiction to entertain direct review of these two cases. The appropriate avenue for Hampton to attack his pleas in these cases would be a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. For that reason we dismiss this direct appeal as to case numbers 94-7000B and 94-7638 without prejudice to Hampton to seek the appropriate relief by way of a 3.850 motion.

II. JURY TRIAL CASE
As to case number 94-30870, Hampton seeks a reversal of his conviction and sentence for possession with the intent to sell cocaine on four grounds. We have carefully considered each such ground and find that there is no basis for reversal.
This case began when Hampton's then girlfriend, Latonya Williams, who is now his wife, made a 911 telephone call to the police during the course of a heated argument with Hampton. Williams testified that she told the police during the 911 call that James had a gun "so the police would arrive faster." Upon the officers' arrival, they found Hampton loading personal belongings into the trunk of his car. The front driver's side door of the car was also open. Williams told one of the officers on the scene that Hampton had pointed a revolver at her and that the gun was in the trunk of Hampton's car. Hampton then told the officers to go ahead and search his car because they wouldn't find a gun. When the police searched Hampton's car, they found a clear bag containing 99 rocks of cocaine underneath the driver's seat. No weapon, however, was located.
At trial, Hampton defended on the basis that the cocaine was not his and he did not know that it was in his car.[1] Williams was called as a witness both for the State and the defense.[2] She testified that she had loaned the car to another man for several hours on the day of the arrest in order to make Hampton jealous. Williams testified that she did not see this other man put any drugs into the *584 car and she also stated that the drugs were not hers.
The State's theory of the cause of the argument that resulted in the 911 telephone call was that Williams had stolen one of Hampton's cocaine rocks and that Hampton had discovered that it was missing. To this end, the State introduced, through another witness called after Williams, the tape of her 911 call to the police. The State argued that Hampton's voice could be heard clearly in the background screaming about the cocaine rock taken by Williams. The defense, on the other hand, argued that the tape was somewhat unintelligible except for the exchange of some vulgarities between Hampton and Williams.
After the State rested its case, and after Hampton's motion for judgment of acquittal was denied, the defense moved to recall Williams so that she could testify about the contents of the recorded 911 tape. The State objected and argued that the defense could have questioned her about the tape when she was on the witness stand even though the tape had not yet been introduced into evidence.[3] The trial court resolved this objection by obtaining an agreement from the State that if the State did not mention the tape in its closing arguments, the trial court would not allow the defense to recall Williams. The State, through the Assistant State Attorneys Michael Mansfield and Colleen Kay, acquiesced to the court's proposed resolution of this matter. Hampton affirmatively waived his right to testify in his own defense and the defense rested. The court then gave some preliminary instructions to the jury about closing arguments and the State began its closing. Almost immediately, Assistant State Attorney Michael Mansfield began discussing the 911 tape in violation of the State's agreement with the court and defense. The defense, however, interposed no objection. Indeed, the defense went on to respond to the State's argument about the tape in its closing statement.
As his first argument on appeal, Hampton argues that the trial erred in denying his motion for judgment of acquittal at the close of the State's case because the prosecution failed to present evidence from which the jury could find that Hampton had knowledge of the presence of cocaine in his car. Assuming without deciding that Hampton was in constructive rather than actual possession of the drugs, the trial court properly determined that the issue of Hampton's knowledge of the presence of the drugs in his car was one for the jury. Gartrell v. State, 626 So.2d 1364 (Fla.1993); Strachn v. State, 661 So.2d 1255 (Fla. 3d DCA 1995); Parker v. State, 641 So.2d 483 (Fla. 5th DCA 1994); State v. Dickerson, 634 So.2d 253 (Fla. 2d DCA 1994); Ferron v. State, 619 So.2d 506 (Fla. 3d DCA 1993); Green v. State, 602 So.2d 1306 (Fla. 4th DCA); review denied, 613 So.2d 4 (Fla.1992); State v. Duran, 550 So.2d 45 (Fla. 3d DCA 1989). Accordingly, the trial court properly denied Hampton's motion for judgment of acquittal.
Next, we find no merit to Hampton's second argument on appeal that the trial court erred in admitting the subject cocaine where the State did not properly establish the chain of custody. We note that although the defense initially interposed a chain of custody objection to the introduction of the drugs and the State responded thereto, the record then reflects that the defense explicitly acquiesced to the admissibility of the cocaine.
For his third argument, Hampton asserts that the trial court's failure to permit him to recall Williams to the stand to testify about the contents of the 911 tape constituted reversible error. We again disagree. The trial court's decision to permit parties to recall a witness to the stand after the witness has already testified is completely discretionary. See generally Tafero v. State, 403 So.2d 355 (Fla.1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); Dawson v. State, 401 So.2d 819 (Fla. 1st DCA), review denied, 408 So.2d 1092 (Fla.1981). Absent a showing of an abuse of discretion, which we *585 do not find here, the trial's decision will not be disturbed on appeal.
Finally, Hampton argues that the prosecutor's breach of its agreement with the court and the defense not to refer to the 911 tape during closing argument constituted prosecutorial misconduct for which he is entitled to a new trial. This argument places this court in a somewhat precarious position. On the one hand, it is clear to us that the State blatantly reneged on an agreement it had made in open court. On the other hand, the defense made no objection to the State's violation of the agreement. We therefore must determine whether the State's misconduct is so fundamentally erroneous as to require a new trial.
In Jones v. State, 666 So.2d 995, 997 (Fla. 5th DCA 1996) the court stated: "[T]he law is clear that a party's failure to object to improper prosecutorial comments will preclude appellate review, unless the comments are so prejudicial as to constitute fundamental error." "Fundamental error goes to the foundation of the case or the merits of the cause of action and can be construed on appeal without objection." Crump v. State, 622 So.2d 963, 972 (Fla. 1993). The court in Silva v. Nightingale, 619 So.2d 4 (Fla. 5th DCA 1993) held that "fundamental error in closing occurs when the `prejudicial conduct in its import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury.'" Id. at 5.
In the instant case, we cannot conclude that the prosecutorial misconduct was so prejudicial as to vitiate the entire trial. State v. Murray, 443 So.2d 955, 956 (Fla. 1984). Having said that, however, we cannot allow the blatant breach of the agreement by the prosecutors in this case to pass without remark. The prosecutors made an agreement with the trial court and defense in open court which they then went on to ignore. In Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), the court discussed the special position occupied by the federal prosecutor which we think applies equally to our own assistant state attorneys. There the court stated:
The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty ... whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.... He may prosecute with earnestness and vigorindeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.
Id. at 88, 55 S.Ct. at 633. Accord Rosso v. State, 505 So.2d 611, 614 (Fla. 3d DCA 1987); Boatwright v. State, 452 So.2d 666, 667 (Fla. 4th DCA 1984). Unfortunately, we find that the conduct of the prosecutors in this case fell below the standards set out in Chapter 4, Rules Regulating The Florida Bar and below the standards of behavior we have a right to expect from officers of the court.
Appeal dismissed in part and affirmed in part.
NOTES
[1] There was testimony from the arresting officer that it was unusual for a drug dealer to allow a consensual search of a vehicle, that Hampton was "surprised" or "stunned" when the rock cocaine was found under the seat and that he turned to Latonya Hampton as he was being arrested and asked "How could you do this to me?"
[2] The defense actually called her out of turn so that her testimony for the defense came directly after her testimony for the State.
[3] The State asserted that the defense had access to the tape prior to trial and was well aware that the State intended to introduce it into evidence.