HARRIS, J.
Wells was charged and convicted of the first degree murder of his live-in girlfriend. Even though the trial was not perfect[1], we find any errors to have been harmless and affirm.
Wells and the victim had a stormy relationship in which Wells had battered her on numerous occasions and was incarcerated once for his abuse of her. Following the victim’s disappearance, the trailer shared by Wells and the victim was examined by law enforcement and blood was seen all around the trailer except in Wells’ room. When testifying about the examination of the trailer made at a time when Wells was not even a suspect, the officer stated that Wells had no explanation for the condition of the trailer. Wells moved for mistrial claiming that the comment was an improper comment on his right to remain silent and the court denied the mo *758 tion. Even if this comment concerning Wells’ pre-arrest, pre-Miranda failure to explain blood all around the trailer when his roommate is missing is an improper comment on Wells’ right to remain silent, in the total context of this case it was harmless.
Wells denied that the victim had come home the evening of her disappearance but clothing which witnesses identified as clothing she had worn that evening was found in the trailer. Wells testified that when he left the trailer the morning following her disappearance, the bloody condition of the trailer did not exist. But a footprint the size of Wells’ foot was discovered imprinted in the blood. A picture of the footprint along with a ruler indicating the footprint was 10 and % inches long was put into evidence and there was testimony that Wells’ foot measured that same length. Wells urges that it was error to receive in evidence the picture of the footprint because it was not shown to meet the Frye standard. We agree with the State that the length of an object measured by a ruler is not subject to a Frye review.
A witness ' befriended by Wells when they were both previously in jail testified that shortly following the victim’s disappearance Wells asked for his help in disposing of the body and that Wells admitted that he had strangled her “by accident” during an argument. Wells thus contends that in any event premeditation was not shown. But the State put on Williams rule evidence of the many beatings inflicted on the victim by Wells and presented a witness who had been incarcerated with Wells during Wells’ earlier incarceration for beating the victim and who testified that Wells stated that he intended to kill her when he was released. That was approximately ninety days before her disappearance. The prior beatings, the prior threat, and the method which a witness testified was admittedly employed by Wells in killing the victim are sufficient, if believed by the jury, to establish preméditation.
Finally, Wells argues that the court erred in permitting too much Williams rule evidence. He claims that such evidence became the focus of the trial and was more prejudicial than probative. We disagree. The prior bad acts committed by Wells on the victim leading up to her death were highly probative and the extent of that evidence presented by the State, while it was certainly prejudicial, was not unreasonable.
AFFIRMED.
COBB and SHARP, W., JJ., concur.

. Thomason v. Gordon, 782 So.2d 896 (Fla. 5th DCA 2001) (J. Harris dissenting) or Lackos v. State, 339 So.2d 217, 219 (Fla.1976).