821 So.2d 423 (2002)
Arturo ALONSO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D00-995.
District Court of Appeal of Florida, Third District.
July 17, 2002.
*424 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Thomas C. Mielke, Assistant Attorney General, for appellee.
Before SCHWARTZ, C.J., JORGENSON and COPE, JJ.
COPE J.
Arturo Alonso appeals his conviction for sexual battery. We reverse for a new trial.

*425 I.
Defendant-appellant Alonso and the victim, M.L., met for a date and went back to M.L.'s apartment. The defendant testified that they had consensual sexual intercourse and M.L. testified that there was no consent. She ran out of the apartment wrapped in a towel and went next door where she told two teenaged children that she had been raped and asked them to call the police.
At trial, the State moved to close the courtroom during the testimony of M.L. and the two teenagers under authority of section 918.16, Florida Statutes (1999).[1] That statute provides:
918.16 Sex offenses; testimony of person under age 16 or person with mental retardation; testimony of victim; courtroom cleared; exceptions.
(1) Except as provided in subsection (2), in the trial of any case, civil or criminal, when any person under the age of 16 or any person with mental retardation as defined in s. 393.063(44) is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney's office.
(2) When the victim of a sex offense is testifying concerning that offense in any civil or criminal trial, the court shall clear the courtroom of all persons upon the request of the victim, regardless of the victim's age or mental capacity, except that parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, and, at the request of the victim, victim or witness advocates designated by the state attorney may remain in the courtroom.
(emphasis added).
The defendant objected that clearing the courtroom would violate his constitutional right to a public trial. Under the statute, the defendant's immediate family would be allowed to remain in the courtroom. However, the defendant's only immediate family in this country was his wife, from whom he was separated. His parents reside in Cuba and could not attend the trial, and there was no other immediate family.
The defendant objected to the exclusion of the defendant's cousin,[2] Tony Garcia, who was a father figure to him. Mr. Garcia had spoken with defense counsel numerous times about the case and had attended every court hearing on the case. The defense objected to exclusion of the defendant's minister, the defendant's girlfriend with whom he had lived for a year, and several other friends.
The trial court concluded that it was obligated to follow the statute as written. The court ruled that under the statute, the only family member who was allowed to remain in the courtroom was the defendant's estranged wife. The remaining relatives and friends were excluded. Prior to excluding them, the trial judge explained:
You know, I'm notI'm doing what the state legislature tells me to do. I don't enjoy this. I think you have a right to *426 be here, but the state legislature says, on their request, I should clear the courtroom of everybody that isn't an immediate family member.
Since you're not an immediate family member, I'm going to have to ask you to wait outside.
As the statute provides, the court personnel, counsel, and the court reporter remained during the testimony.[3] Law school interns who had worked on the case were also allowed to be present.
The courtroom was closed in this fashion only for the testimony of the victim and the two teenaged witnesses. Thereafter the courtroom was reopened to the public.
The defendant was convicted of one count of sexual battery with great force, and acquitted of another sexual battery count. The defendant has appealed.

II.
It has been held that the automatic application of a statute of this general type violates the United States Constitution. Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).
In order to implement the statute in a constitutional way, it is necessary to apply a four-part constitutional test when closure of the courtroom is requested. As the Second District Court of Appeal has explained:
Both the Sixth Amendment to the United States Constitution and article I, section 16 of the Florida Constitution provide the accused with the right to a public trial. While we recognize that the right of access in a criminal trial is not absolute, the circumstances allowing closure are limited. See Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). In order to justify any type of closure, whether the closure is total or partial, the court must find "that a denial of such right is necessitated by a compelling governmental interest and is narrowly tailored to serve that interest." 457 U.S. at 607, 102 S.Ct. at 2620.
The appropriate analysis to follow to determine whether a particular case warrants closure is set forth in Waller [v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) ]. There are four prerequisites that must be satisfied before the presumption of openness may be overcome. First, the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced; second, the closure must be no broader than necessary to protect that interest; third, the trial court must consider reasonable alternatives to closing the proceedings; and fourth, the court must make findings adequate to support the closure. Waller, 467 U.S. at 47, 104 S.Ct. at 2215.
Pritchett v. State, 566 So.2d 6, 7 (Fla. 2d DCA 1990); see also Roberts v. State, 816 So.2d 1175 (Fla. 2d DCA 2002); Whitson v. State, 791 So.2d 544 (Fla. 2d DCA 2001). Contra Hobbs v. State, 820 So.2d 347 (Fla. 1st DCA 2002); Clements v. State, 742 So.2d 338, 341 (Fla. 5th DCA 1999), review dismissed, 782 So.2d 868 (Fla.2001).
The trial court itself expressed doubts about whether the courtroom should be closed under the circumstances of this case. In the absence of the necessary findings justifying the closure, we must order a new trial.
*427 On the facts of this case, we see no viable argument for closing the courtroom during the testimony of the teenaged witnesses, who were fourteen and twelve at the time of trial. They were not victims. They simply recounted what happened when the victim came to their apartment, including what the victim told them. We see no overriding interest served by closing the hearing during their testimony.
The analysis with respect to the victim must be addressed on remand.

III.
Since there must be a new trial, we comment on two other issues raised by the defendant.
First, the jury was given the standard jury instruction on sexual battery. The defendant contends that there should have been a special instruction on the issue of consent. We decline to reach this issue because it was never presented in the trial court and has been raised for the first time on appeal. The defendant may present a proposed jury instruction for consideration by the trial court on remand.
Second, the defendant made a motion for judgment of acquittal in the trial court, arguing that the evidence was legally insufficient to support the charge of sexual battery with great force. § 794.011(3), Fla. Stat. (1997).[4] Insofar as pertinent here, that crime occurs where the defendant commits sexual battery and "uses actual physical force likely to cause serious personal injury...." Id. "`Serious personal injury' means great bodily harm or pain, permanent disability, or permanent disfigurement." Id. § 794.011(1)(g).
The defendant argued that the evidence did not show the use of actual physical force likely to cause serious personal injury, and that the charge should be reduced to the lesser included offense of sexual battery under subsection 794.011(5). That crime consists of sexual battery in which the perpetrator "does not use physical force and violence likely to cause serious personal injury...." Id.
In ruling on a motion for judgment of acquittal, the court must construe the evidence in the light most favorable to the State. P.M. v. State, 719 So.2d 1266, 1267 (Fla. 3d DCA 1998); Ulloa v. State, 441 So.2d 169, 170 (Fla. 3d DCA 1983).
According to the victim, the defendant forced her onto the bed, facing down, causing her to be unable to breath. She felt that she was suffocating. There was an anal penetration, and the victim testified that the pain was horrible. The rape treatment center physician, Dr. Rao, testified that there was tearing and bruising on account of the entry, and confirmed that the pain would be severe. In the physician's opinion, the physical injuries caused by the penetration were consistent with nonconsensual sex, and unlikely to have been caused by consensual sex.
The defendant argues that in deciding whether there has been actual physical force likely to cause serious personal injury, the court must ignore any injury occasioned by the penetration itself, and must only look to any other injury suffered by the victim. We reject this argument. The statute is not so limited.
The testimony of the victim and the rape treatment center physician supported the existence of great bodily harm or pain. Dr. Rao testified regarding the physical injuries to the victim and showed photographs to the jury. Both Dr. Rao and the victim testified regarding the great pain that was inflicted. The question whether *428 the defendant had used actual physical force likely to cause serious personal injury was properly submitted to the jury. The evidence was legally sufficient and the trial court's ruling on this point was correct.

IV.
For the reasons stated, we reverse the judgment and remand for a new trial.
SCHWARTZ, C.J., concurs.
JORGENSON, J., specially concurring.
I concur in the result solely because the United States Supreme Court has mandated that trial courts must first apply a four-part analysis before statutes such as section 918.16 can be constitutionally implemented. See Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).
NOTES
[1] The trial date was January, 2000.
[2] We agree with the trial court that a cousin is not "immediate family" for purposes of the statute. See Black's Law Dictionary 620 (7th ed.1999) (within the definition of "family," defining "immediate family" as "[a] person's parents, spouse, children, and siblings.")
[3] Under the statute, the press cannot be excluded. So far as appears from the record, no members of the press attended this trial.
[4] The date of the crime was April 7, 1999.