905 So.2d 160 (2005)
Dennis IRIZARRY, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-975.
District Court of Appeal of Florida, Third District.
February 9, 2005.
Rehearing and Rehearing Denied July 13, 2005.
*162 Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Meredith L. Balo and Valentina M. Tejera, Assistant Attorneys General, for appellee.
Before SHEPHERD, CORTIÑAS, and ROTHENBERG, JJ.
Rehearing and Rehearing En Banc Denied July 13, 2005.
ROTHENBERG, J.
The defendant, Dennis Irizarry, appeals from a final judgment of conviction and resulting sentences. We affirm.
The defendant was charged by information with kidnapping, burglary with assault or battery, aggravated battery with great bodily harm, and aggravated stalking. The State filed a notice of intent to rely on Williams[1] rule evidence alleging that when the victim and defendant lived together as common law husband and wife in New York, he hit her, put a gun to her head, and was very jealous. The State also filed an amended notice alleging that in August 1992, when the victim was living in a domestic violence shelter with her children in New York, the defendant broke in, raped her, and beat her until she was unconscious (hereinafter referred to as the "1992 attack").
The defense filed a motion to strike the Williams rule notices. Following a hearing, the trial court ruled that the State could introduce evidence regarding the 1992 attack.
At trial, the victim testified as to her relationship with the defendant. She was married to the defendant for twelve years which produced two children, Daniel and Dylan. She also had another child, Christopher, from a previous relationship. She testified that in 1992 while staying at a shelter, the defendant broke in, raped her and beat her unconscious. After the incident, she reconciled with the defendant and continued to live with him.
Years later, in January 2000, she and the defendant moved to Florida with the children. After their son Dylan passed away in May 2000, the family moved to an apartment owned by the victim's father. Two weeks later, she told the defendant that the relationship was over and told him to leave.
On October 31, 2001, the victim told the defendant that he must call before coming over and that he was not allowed to be in the apartment when she was not home. *163 The victim also told her children not to open the door or permit anyone including the defendant to enter the apartment when she was not home. On November 12, 2001, however, the defendant came over and convinced Daniel to let him in, telling him he wanted to surprise his mother. When the victim came home, she went into Daniel's room where she found the defendant hiding behind the door. The victim testified that the defendant was sweaty and looked upset and she was afraid something would happen so she told the defendant that they should go outside. After they exited the apartment, the defendant grabbed her by the hair, dragged her back inside, locked the door, and punched her until she lost consciousness. When she woke up, she discovered that she was no longer by the front door but was in the living room.
Christopher testified that Daniel let the defendant into the apartment and that when the victim came home, he told her that there was a surprise in Daniel's room. When the victim entered the room, she found the defendant hiding behind the door. Christopher's testimony as to the defendant's attack of the victim was consistent with the victim's testimony.
After the jury was excused for the day, the defendant requested permission to recall the victim so that he could ask her why she had visited him in the Dade County jail on numerous occasions if she was really so terrified of him. The State objected arguing that the defense had already cross-examined the witness and that she had left for the day. Additionally, two other witnesses had testified since the victim was excused and the jury had recessed for the night. The trial court ruled that the defense could call the victim during its case and instructed the State to have the victim available since the defense had not subpoenaed her.
The State rested and the defense moved for a judgment of acquittal. As to the kidnapping charge, the defense argued that the State did not prove all the elements in that the movement was slight and the confinement of the victim was inconsequential. As to the burglary charge, the defense argued that Daniel gave the defendant permission to enter the apartment, and since the State did not prove that he had the intent to commit the crime of aggravated battery when he initially entered the apartment, the court erred by not granting his motion for judgment of acquittal on that count. The trial court denied the motion.
The defendant testified. He denied raping the victim in 1992. He also testified that on November 12, 2001, he had permission to enter the apartment, as Daniel asked him to come in. When the victim came home, they went outside and he accidentally grabbed her hair when he grabbed her shoulder. He claimed that the victim hit him, and that he hit her in an attempt to defend himself. He concluded by testifying that the victim had visited him numerous times while he was in the Dade County jail.
Although the State produced the victim and her son during the defendant's case, the defense rested without calling either and thereafter, renewed its motion for judgment of acquittal.
The jury found the defendant guilty as charged, and he was later sentenced. In the defendant's appeal he raises several grounds.
The defendant contends that the trial court abused its discretion by permitting the State to introduce the 1992 attack. We disagree.
Pursuant to Williams, as codified in section 90.404(2)(a), Florida Statutes (2001), "[s]imilar fact evidence of other *164 crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including ... proof of motive, . . . intent,. . . or absence of mistake or accident." § 90.404(2), Fla. Stat. (2001). The collateral evidence, however, is not admissible for the sole purpose of proving bad character or propensity. The primary test for admissibility of collateral crimes evidence is relevancy. See Griffin v. State, 639 So.2d 966 (Fla.1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995); Williams, 110 So.2d at 658; Jackson v. State, 403 So.2d 1063 (Fla. 4th DCA 1981), review denied, 412 So.2d 466 (Fla. 1982). See also, Finney v. State, 660 So.2d 674 (Fla.1995) (similarity is not always a prerequisite to admissibility), cert. denied, 516 U.S. 1096, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); Williams v. State, 621 So.2d 413 (Fla.1993) (explaining that other crimes, whether factually similar or dissimilar to the charged crime, are admissible if the evidence is relevant to prove a matter of consequence other than bad character or propensity).
The victim testified that the defendant was upset, that he grabbed her hair, dragged her into the apartment and beat her until she lost consciousness. The defendant, however, claimed that he accidentally pulled the victim's hair, and that he struck her in self-defense after she began hitting him. The State introduced evidence of the 1992 attack in which the defendant beat the victim until she lost consciousness and raped her to show the controlling nature of defendant's relationship with the victim, which included beating her until she lost consciousness, and his intent. We conclude that the collateral evidence was relevant to prove the defendant's intent, the absence of mistake, and the controlling nature of his relationship with the victim, to dispute his claim that he had accidentally pulled the victim's hair, and that he did not intend to harm her and had only struck her in self-defense. See Wilchcombe v. State, 842 So.2d 198, 199 (Fla. 3d DCA 2003) (holding that "trial court did not abuse its discretion by allowing the state to introduce direct evidence of the controlling nature of [defendant's] relationship with the victim"); Simmons v. State, 790 So.2d 1177, 1179-80 (Fla. 3d DCA 2001) (holding that prior battery was admissible to prove defendant's intent to injure). Additionally, we find that the probative value of this relevant evidence substantially outweighs the danger of unfair prejudice especially since it did not become a feature of the trial, § 90.403, Fla. Stat. (2001), and the 1992 attack was not too remote in time. See Duffey v. State, 741 So.2d 1192 (Fla. 4th DCA 1999) (holding that collateral crime that occurred twelve years prior to charged offense not too remote in time). Finally, we find that any error in the introduction of the collateral crimes evidence was harmless based upon the overwhelming evidence of guilt. DiGuilio, 491 So.2d 1129 (Fla.1986).
The defendant claims that the trial court reversibly erred by not requiring the State to recall the victim for further cross-examination.
Absent an abuse of discretion, a trial court's decision to deny a defendant's request to recall a witness for further cross-examination will not be reversed on appeal. See Tafero v. State, 403 So.2d 355, 361 (Fla.1981), cert. denied, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 694 (1982); Hampton v. State, 680 So.2d 581, 584-85 (Fla. 3d DCA 1996). After the defendant had concluded his cross-examination of the victim and she had been excused, another two witnesses had testified, were cross examined and excused, the jury had been excused for the evening, and the court was about to recess for the night. The defendant requested that the victim be recalled *165 the following day so that he could ask her why she had visited him in jail if she really feared him. The defendant testified and it was unrebutted, that the victim visited him in jail after his arrest. Why she did so was not relevant nor material as to the elements of the crimes charged, nor would it explain what occurred between the victim and defendant on the evening of the attack. Moreover, during the defendant's extensive cross-examination of the victim it was revealed that she had a history of reconciling and keeping in contact with the defendant even after being raped and abused by him. Because the evidence that the defendant sought to elicit was not crucial, the trial court did not abuse its discretion in denying the defendant's request to recall the victim for further cross-examination. State v. Ellis, 491 So.2d 1296, 1297 (Fla. 3d DCA 1986) (holding that where "the case is technically not closed and the ends of justice may best be served by the admission of crucial evidence, it is an abuse of the trial court's discretion to deny the introduction of such evidence.") (emphasis added). Further, given the overwhelming evidence of guilt, error, if any, was harmless. State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Camellon v. State, 741 So.2d 1179 (Fla. 3d DCA 1999); Benson v. State, 526 So.2d 948, 958 (Fla. 2d DCA), review denied, 536 So.2d 243 (Fla. 1988), and cert. denied, 489 U.S. 1069, 109 S.Ct. 1349, 103 L.Ed.2d 817 (1989).
The defendant also argues that the trial court erred by denying his motion for judgment of acquittal as to the burglary charge. We disagree.
When ruling on a motion for judgment of acquittal, the trial court is required to "construe the evidence in the light most favorable to the State." See Alonso v. State, 821 So.2d 423, 427 (Fla. 3d DCA 2002). Moreover, the motion is properly denied if, after viewing the evidence in such a light, "a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt...." Pagan v. State, 830 So.2d 792, 803 (Fla. 2002), cert. denied, 539 U.S. 919, 123 S.Ct. 2278, 156 L.Ed.2d 137 (2003). It is undisputed that the defendant was given permission to enter the dwelling (although the State argues that this consent was obtained by trick or deceit). The defendant therefore, asks this Court to rely upon Delgado v. State, 776 So.2d 233 (Fla.2000), and reverse the defendant's conviction for burglary, arguing that the State did not prove that the defendant remained in the premises surreptitiously or that consent had been withdrawn, as required by Delgado. The defendant's reliance upon Delgado, however, is misplaced as the Florida Legislature amended section 810.02(1)(b), Florida Statute, on July 1, 2001. As the offense of burglary in this case occurred on November 12, 2001, the burglary statute as amended applies. Section 810.02(1)(b), Florida Statutes (2001), provides:
(b) For offenses committed after July 1, 2001, "burglary" means:
1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
a. Surreptitiously, with the intent to commit an offense therein;
b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
c. To commit or attempt to commit a forcible felony, as defined in s. 776.08.
*166 Thus, the defendant may be found guilty of the crime of burglary if he entered with consent but (1) did so with the intent to commit an offense therein, (2) remained surreptitiously with the intent to commit an offense therein, (3) remained after consent had been withdrawn with the intent to commit an offense therein, or (4) remained to commit a forcible felony.
In the instant case, when viewing the evidence in the light most favorable to the State, when the defendant re-entered ("remained in") the victim's home, he did so with the intent to commit a forcible felony, § 810.02(1)(b)(2)(c), Fla. Stat. (2001), to wit; an aggravated battery. The victim asked the defendant to leave; the victim left the apartment and the defendant followed her outside; the defendant grabbed the victim by the hair and dragged her forcibly back into the apartment where he beat her until she lost consciousness.
There is also evidence to support a jury's finding that the defendant obtained consent to enter from the victim's minor child, by trick or deceit, which would vitiate the consent and/or that he intended to commit an offense of battery or aggravated battery upon the victim and/or "her boyfriend" when he initially entered the premises. The victim told the defendant he was not permitted to come to the apartment unless he called in advance and received permission. She instructed her children not to let the defendant or anyone in when she was not at home. The defendant had called her numerous times that day and he sounded agitated. He believed the victim was with another man, not at the hospital visiting her ill father as she claimed, and he had told her previously (in September or October) that he would "fucking kill her" if he found out she was with another man. After the defendant convinced Daniel to allow him to enter the apartment he hid in Daniel's room behind the door. When the victim found him, the defendant was sweating and appeared upset. The defendant followed the victim out of the apartment when she exited, grabbed her by the hair, dragged her back inside and beat her until she lost consciousness. When she came to, she found that the apartment had been ransacked. During a subsequent taped phone call he asked the victim if it was worth getting her "ass kicked for," and told her she was "lucky that was all she got" and that he wished she had "brought that asshole home because he was going to get fucking killed."
While there is also evidence to support a finding that consent was withdrawn in this case, we need not reach that argument in light of the evidence which supports a finding that the defendant (1) remained in the structure with the intent to commit a forcible felony; and/or (2) obtained permission to enter by trick or deceit; and/or (3) initially entered with the intent to commit an offense therein. The trial court, therefore, did not err by failing to grant the defendant's motion for judgment of acquittal as to the burglary charge.
Next, the defendant contends that the trial court erred by denying his motion for judgment of acquittal as to kidnapping, arguing that any confinement of the victim was incidental to the aggravated battery. We disagree.
A kidnapping is committed if the victim is taken or confined in order to facilitate the commission of another crime. Faison v. State, 426 So.2d 963, 965 (Fla. 1983). In Faison, the Florida Supreme Court adopted the following test to determine whether the movement or confinement constitutes a kidnapping:
[I]f a taking or confinement is alleged to have been done to facilitate the commission *167 of another crime, to be kidnapping the resulting movement or confinement:
(a) Must not be slight, inconsequential and merely incidental to the other crime;
(b) Must not be of the kind inherent in the nature of the other crime; and
(c) Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.
Faison, 426 So.2d at 965 (quoting State v. Buggs, 219 Kan. 203, 547 P.2d 720, 731 (1976)).
Once again, the defendant has failed to view the facts in the light most favorable to the State. When viewed in this light, the evidence is that the defendant pulled the victim by the hair, forced her back into the apartment and then beat her until she was unconscious. Rather than beating her in the common areas of the apartment complex where her neighbors could have easily witnessed the beating and have come to her rescue, the defendant dragged her by the hair into the apartment and locked the door. The movement of the victim forcibly from outside the apartment to inside, and the locking of the door, was not "slight, inconsequential and merely incidental;" was not "inherent in the nature" of the aggravated battery; was done in order to facilitate the commission of the aggravated battery and to "substantially lessen[] the risk of detection," the victim's ability to escape, and a neighbor's ability to protect her from further harm. Faison.
Finally, the defendant claims that his dual convictions for burglary with a battery and aggravated battery violate the Double Jeopardy Clause because the offenses arose from the same battery.
This issue has been addressed and rejected by several Florida courts. In State v. Reardon, 763 So.2d 418, 419 (Fla. 5th DCA 2000) (en banc), the Fifth District held that "there is no statutory or constitutional bar to the entry of convictions for both aggravated battery and burglary with a battery arising out of the same criminal episode." The court reasoned that the dual convictions for both burglary with a battery and aggravated battery were proper because the crimes do not require proof of identical elements, "the two offenses are not degrees of the same crime as provided by statute," and "neither offense is subsumed by the other." Reardon, 763 So.2d at 420. Accord Blevins v. State, 756 So.2d 1052 (Fla. 4th DCA 2000); Washington v. State, 752 So.2d 16 (Fla. 2d DCA 2000); Billiot v. State, 711 So.2d 1277 (Fla. 1st DCA 1998). Finally, the defendant's reliance on this Court's opinions in Torna v. State, 742 So.2d 366 (Fla. 3d DCA 1999), Lewis v. State, 740 So.2d 82 (Fla. 3d DCA 1999), and Febles v. State, 654 So.2d 615 (Fla. 3d DCA 1995), is misplaced where they deal with convictions for burglary with a battery and simple battery or assault, not aggravated battery.
Accordingly, the defendant's convictions and resulting sentences are affirmed.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959).