WARNER, J.
James Monds appeals his convictions of battery on a law enforcement officer, resisting an officer with violence, and possession of marijuana. He contends that the court erred in allowing the prosecution to present testimony regarding a drug dealer’s illegal activity that occurred during the hours prior to Monds’s contact with the drug dealer, which led to the events ending in Monds’s arrest. Because the evidence did not become a feature of the trial and was necessary to establish that the officers were engaged in the lawful execution of their legal duty when they initially stopped Monds, we affirm.
On the evening in question, Detective Robert Graff was involved in an undercover investigation designed to find a drug dealer and conduct surveillance on him or her. At around 7:00 p.m. Graff observed an individual at a particular stop sign. Occupants of approaching vehicles would stop near the individual and exchange money with him. The man would then go to a patch of grass alongside the road, retrieve an unidentified object, and deliver it to the person in the car. The driver would leave, and Detective Graff would call on other officers to follow the vehicles. Between 7:00 p.m. and 8:45 p.m., Graff observed thirteen to fifteen of these types of transactions. Based upon Graffs training and experience, he believed that the person at the stop sign was selling marijuana.
At around 8:40 p.m., Graff observed a driver in a large vehicle approach and speak to the drug dealer under surveillance. Similarly to all prior transactions, he observed the dealer take money from the driver, secure an unidentified object in the grass, and give the object to the driver, who then drove off.
Detective Graff called in other officers to follow the vehicle, which was driven by Monds. Two officers, Sigmon and Morales, riding in an unmarked vehicle, observed Monds’s vehicle and activated then-emergency lights to stop the vehicle. Sig-mon said the purpose of stopping the vehicle was both a traffic violation for a broken brake light, as well as possible drug violations.
Once Monds stopped the car, he got out, but Sigmon told him to get back in the car. *627 Monds asked why he had been stopped, and he was told it was because he had a brake light out. However, when asked for his license, Monds became very nervous.
After checking 'out the license, the officers told Monds that they also stopped him on suspicion that he was involved in a possible drug transaction. Monds became more nervous but stepped out of the vehicle when the deputies, fearing for their safety, asked to conduct a pat down.
When Sigmon reached into Monds’s pocket, Monds turned and ran. As the officers chased him, they witnessed him throw something to the ground from his pocket. Morales testified that he yelled, “Stop, sheriffs office.”
Morales caught up with Monds and immediately jumped on his back. Monds threw Morales across his shoulder onto the ground. By the time 'Sigmon reached them, Morales and Monds were grappling on the street,- with Morales pinned underneath Monds. Sigmon started kicking Monds in the thigh and torso to get him to release Morales. Once he released Morales, both officer's kicked Monds until he was compliant and allowed them to handcuff him.
After securing Monds, Sigmon returned to the location where he saw Monds throw something to the ground. Sigmon found small bags of marijuana, business cards, and paper towels.
Monds, an officer with the Department of Corrections, had a different version of events. As he returned from the grocery store with his wife, he saw his nephew on the corner and pulled over to talk with him. His nephew is known in Monds’s community as a drug dealer. After having a brief conversation, he proceeded to drive home when he noticed a vehicle behind him. Thinking the vehicle was trying to flag him down, he pulled into a parking lot to find out what the occupants of the other vehicle wanted.
He exited his car but was immediately told to get back in. He did not know the people who stopped him. He did not believe they were police officers. When he was asked to step out of the vehicle to be searched, he was concerned for his wife’s safety. He told the men that if they were police officers, they needed to call back-up to' prove their identity. The officers grabbed him and pushed him into the side of the car. Believing that the men may have been connected with threats made against him, he ran away. He stopped once he got to the other side of a building, and Morales jumped on his back. At this point he saw Morales’s sheriffs jersey.
Monds testified that he did not give his nephew any currency and did not receive any drugs from him," nor did he throw anything on the ground. Further, he testified that he never put his hands on the officers. Rather, Morales fell on his back, and Monds did not resist once he saw Morales’s green sheriffs jersey.
The jury convicted Monds of all charges. On appeal, his sole contention of error is the admission of Detective Graffs testimony regarding his surveillance of the drug dealer in the hours' prior to the’dealer’s' contact with Monds. Because this evidence was relevant to establish that the officers were engaged in the execution of a lawful duty and to provide the jury with the circumstances surrounding Monds’s arrest, and because the probative value of the testimony was not outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion in admitting this evidence.
It is well-settled that “evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case.” Beckett v. State, 730 So.2d 809, 811 *628 (Fla. 4th DCA 1999) (citations omitted). However, where the evidence of uncharged crimes is inseparable from the crime charged or inextricably intertwined, it is admissible as a relevant part of the act in issue. See Vail v. State, 890 So.2d 373, 376 (Fla. 3d DCA 2004). “The test for admissibility of collateral offenses is relevancy, not necessity.” Jackson v. State, 403 So.2d 1063, 1066 (Fla. 4th DCA 1981).
In Jackson, the defendant allowed three other men to use his car in order to effectuate a robbery. Later that day, defendant committed a robbery and murder with the three men who had committed the earlier robbery. Defendant was convicted for the murder and second robbery, and evidence of the earlier robbery was admitted in his trial. On appeal, defendant argued that testimony of the earlier robbery should not have been admitted because he was not involved. The court held that the evidence supported the determination that the two robberies were part of one long criminal episode. Therefore, “the evidence of the earlier robbery was admissible because it established the entire context out of which the criminal conduct arose.” Id.
Similarly, in this case Graffs testimony regarding his observations of the suspected drug dealer for the period prior to Monds’s arrival formed the basis for finding that the officers were engaged in a lawful duty in conducting their arrest of Monds. Resisting an officer with violence, one of the charges against Monds, requires that the defendant resist while the officer is involved in the “execution of legal process or in the lawful execution of any legal duty.” § 843.01, Fla. Stat. (2002). Limiting the evidence to the fact that Graff merely saw the suspected drug dealer hand something to Monds, without testimony regarding the circumstances before Monds’s arrival, would not have provided an adequate basis for this lawful duty. Additionally, Monds asserted that he did not know where the marijuana came from and that it was not his. Graff, based on his experience and training, refuted this claim by establishing that the alleged drug dealer was selling drugs and therefore provided Monds with the drugs that were found on the road. Based on the foregoing, the testimony was clearly relevant to establish the context of the entire transaction.
Monds asserts that even if the evidence was relevant, it was more prejudicial than probative and became a focal point of the case. See § 90.403, Fla. Stat. (2002). Graffs testimony regarding the prior drug activity spanned only four pages in a transcript of approximately 700 pages of testimony. It was limited to what Graff observed and did not delve into the results of the ‘call outs’ on the ten to twelve other cars. The testimony from Morales and Sigmon regarding what happened once they stopped Monds did not even touch on the evidence regarding the suspected drug dealer. Additionally, the state made only one reference to the alleged sales to the people in the cars prior to Monds’s arrival during its lengthy closing. Based on the foregoing, the testimony was more probative than prejudicial, did not become a focal point of the trial, and was properly admitted. See Wells v. State, 798 So.2d 757 (Fla. 5th DCA 2001) (holding that testimony relating to prior beatings of defendant’s girlfriend by defendant in his trial for her murder was highly probative, did not become feature of trial, and was properly admitted).
Finding no error in the admission of the testimony, we therefore affirm Monds’s convictions and sentence.
GROSS and MAY, JJ., concur.