910 So.2d 372 (2005)
Anthony SZEMBRUCH, Petitioner,
v.
STATE of Florida, Respondent.
No. 5D05-2836.
District Court of Appeal of Florida, Fifth District.
September 16, 2005.
*373 Stephen Plotnick of Law Offices of Victor O. Mead, Winter Park, for Petitioner.
No Response for Respondent.
PER CURIAM.
In denying the petition for writ of prohibition, we adopt the lower court's order:

ORDER DENYING DEFENDANT'S MOTION TO DISMISS
This matter came before the Court on July 29, 2005, on Defendant's Motion to Dismiss for constitutional speedy trial violation. After hearing argument of counsel, reviewing the law cited and the court file, and having listened to the testimony presented and proffered, the Court finds as follows:

*374 FACTUAL BACKGROUND
The facts and time line are generally not in dispute. Defendant was charged with two counts of sexual activity with a child (his stepdaughter, age 13, at the time of the events) by information filed on March 12, 1993.[1] On May 27, 1993, Defendant entered a plea of no contest to the two count information.[2] He was sentenced on August 16, 1993.[3] On August 30, 1993, the State appealed alleging that the trial court downwardly departed without giving clear and convincing reasons therefore. Per the written opinion from the Fifth District Court of Appeal, both parties agreed that the trial court should reverse the sentence, allow Defendant to withdraw his pleas, reinstate his not guilty pleas, and remand the case for further proceedings. The Mandate was issued on April 27, 1994.
The trial court issued an order on May 9, 1994, resetting this matter for trial on July 25, 1994. The State filed a motion to advance the cause because the assigned state attorney would be out of the office during the set trial period. Said motion notes that speedy [sic] would run on July 25, 1994. This motion was set for timely hearing and an order was entered, per the Clerk's stamp, on June 10, 1994, setting this matter for an August 15, 1994, trial date. The Order notes at the bottom: "[w]aive 90 day re-trial period," apparently as a result of defense counsel's agreement to waive "speedy."
On July 27, 1994, Defendant, pro se, but while still being represented by counsel, filed a "Notice of Expiration of Time for Speedy Trial." On August 12, 1994, the trial court granted defense counsel's Motion to Withdraw, dated August 9, 1994. Allegedly, Defendant orally moved for discharge. On August 24, 1994, the trial court, by written order, denied Defendant's Motion for Discharge on Speedy Trial grounds and set trial for a third time for the September 26, 1994, trial docket. On September 29, 1994, the trial court granted a stay to allow an appeal. On October 3, 1994, Defendant filed a Writ of Prohibition based on the trial court's denial of the Motion to Discharge.
Apparently[4], the Writ of Prohibition was denied by the Fifth District Court of Appeal and the case was disposed of without Mandate on November 16, 1994.[5] On April 21, 2005, the Court set a status hearing for May 4, 2005, to determine the status of this matter. At the hearing, the *375 Court was advised by Defendant that he would be obtaining his own counsel and the trial court entered an order setting a pre-trial date for July 25, 2005, with a trial date for the trial period commencing on August 1, 2005. Counsel for Defendant filed a Motion to Dismiss For Constitutional Speedy Trial Violation under certificate on July 20, 2005.
At the hearing held on July 29, 2005, testimony was taken from Defendant, and the Assistant State Attorney related information suggesting that the victim, who was present at the hearing, would be willing and able to testify at any subsequent trial. It is from the hearing on this motion that this Order ensues.

APPLICABLE CASE LAW
The right to a speedy trial is a constitutional right guaranteed by the Sixth Amendment to the United States Constitution. It is a fundamental right. Once the speedy trial rule has been waived, it is supplanted by the constitutional speedy trial period; this latter is not a fixed period of time but is, rather, a reasonable time which is measured by tests of reasonableness and prejudice, not a specific numbers of days. Blackstock v. Newman, 461 So.2d 1021 (Fla. 3d DCA 1985); Brownlee v. State, 427 So.2d 1106 (Fla. 3d DCA 1983); Gallego v. Purdy, 415 So.2d 166 (Fla. 4th DCA 1982).
Without doubt, a delay of eleven years is a sufficient time to make the delay presumptively prejudicial and require an inquiry pursuant to Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). See e.g. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (a more than five year delay, though extraordinary, constitutes presumptive, not absolute, prejudice); Madonia v. State, 648 So.2d 260 (Fla. 5th DCA 1994) (delay of more than three years was presumptively prejudicial). The term "presumptive prejudice," as used in determining whether the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay, does not necessarily indicate a statistical probability of prejudice, but rather simply marks the point at which courts may deem delay unreasonable enough to trigger an inquiry under Barker. Doggett, 505 U.S. at 652, 112 S.Ct. 2686.
The Doggett court cited Barker, for the proposition that under a Sixth Amendment challenge, a court must make four separate inquiries: whether the delay was uncommonly long, whether the state or defendant was more to blame for the delay, whether the defendant properly asserted his right to a speedy trial, and whether the defendant suffered prejudice as a result of the delay. Doggett, 505 U.S. at 647, 112 S.Ct. 2686. This constitutional right to speedy trial can be determined only on an ad hoc basis in which the conduct of the prosecution and the defendant are weighed and balanced. Barker, 407 U.S. at 530, 92 S.Ct. 2182.
Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. Barker, 407 U.S. at 530-31, 92 S.Ct. 2182. Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. The third factor, whether and how a defendant asserts his right, is closely related to the other factors. The strength of his efforts will be affected by *376 the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. A defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. The Barker court emphasized that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial. A fourth factor is prejudice to the defendant. Barker, 407 U.S. at 531-33, 92 S.Ct. 2182.
The Barker court concluded that it regarded none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. Barker, 407 U.S. at 533, 92 S.Ct. 2182.

ANALYSIS
The issue presented, and the basis of this Motion, is an alleged speedy trial violation of Defendant's constitutional right to a speedy trial, and not pursuant to Florida's Speedy Trial rule under Rule 3.191, Florida Rules of Criminal Procedure. Both the trial court and the district court have established the law of the case with regard to Rule 3.191 as it applies to this matter and found no violation. Thus, a speedy trial rule claim is procedurally barred. See Gonzalez v. State, 786 So.2d 559 (Fla.2001); see also Turner v. Dugger, 614 So.2d 1075, 1078 (Fla.1992) (claims procedurally barred if they, or variations thereof, were raised on direct appeal).
To say this case is unique is to state the obvious. The delay in bringing Defendant to trial, once the plea was withdrawn, was in excess of eleven years  substantially longer than the time frame in any case to which the Court must look for guidance; Doggett, delay of 8 ½ years; Barker, delay in excess of 5 years; Madonia, delay in excess of 3 years. In addition, the fact pattern is also most bizarre. The allegations are that neither the State, nor Defendant, nor for that matter the trial court or the Clerk of the Court, ever received an order advising of the disposition of the Writ of Prohibition. Why no inquiry was made over the course of the eleven years  by the State, by Defendant, by the trial court, or by the Clerk of the Court  is possibly of historical interest and significance, but only one of several factors necessary for determination in deciding this matter.
This case clearly requires an inquiry into, and analysis under both Doggett and Barker. Eleven years does make the delay "presumptively prejudicial." The analysis necessitates reviewing: (1) the length of the delay, (2) whether the State or Defendant is more to blame, in other words, who caused the delay, (3) whether Defendant properly asserted his right to a speedy trial, and (4) whether Defendant has suffered prejudice as a result of the delay. Doggett 505 U.S. at 651-52, 112 S.Ct. 2686. None of the individual categories are determinative by themselves, although certain inquiries (i.e. length and prejudice) can carry greater weight when viewed together.

Length of Delay
The delay in this matter  over eleven years  is indeed  extraordinary. If the length of delay alone is sufficient to warrant a granting of the Motion to Dismiss, then the time frame herein is more than enough to warrant the Court granting the final dismissal of this matter and discharge of Defendant.
*377 However, case law does not suggest that time elapse  by itself  mandates the dismissal of this cause. An analysis must be made in combination with the ensuing prejudice to a defendant to determine the necessity of granting a dismissal. While no specific prejudice need be identified, the State in this matter asserts the reverse  that there is no prejudice. If, despite the admittedly extended delay, no prejudice enures to Defendant, then time alone may not necessitate the dismissal. "Presumptively prejudicial" is not the same as "conclusively prejudicial." Conversely, because of the extended time frame that has elapsed, if even some prejudice can be shown, dismissal may well be warranted.

Responsibility for the Delay
Neither Defendant nor the State suggest that the delay was intentional or occurred as a result of a plan to delay or hinder the prosecution of this matter. Defendant has testified that he was totally unaware that the District Court had ruled in this matter until he received a notice of status hearing from the Court some eleven years after the Writ of Prohibition was "filed." Defendant, and his present counsel, advised the Court that Defendant even made inquiry of his prior attorney and was told that no decision had been received up to and including several years after the filing of the Writ. It is true, as the State suggests, that the initial delay of the re-trial occurred by Defendant, not the State, filing the Writ. There is even some suggestion by the State that Defendant should have followed up since it was "his appeal." But Defendant has essentially adopted the attitude "no news is good news." He was out on bond, not being held, not under any sentence and living his life freely. Therefore, no further inquiry was made by Defendant or his legal representative. Nor was he under a duty to make such inquiry. Bulgin v. State, 912 So.2d 307, 2005 WL 1176056 (Fla. May 19, 2005) (the State has the responsibility to proceed with a timely prosecution of defendants).
The State also claims to have been unaware of the District Court's disposition. While the responsibility for pursuing the action is with the State, the pursuit was placed on hold by Defendant's appeal. There certainly is no evidence of any intention by the State to deliberately delay this matter, and this Court specifically finds that the State did not intentionally delay this matter. However, the duty to prosecute this matter in a timely fashion is on the State. From all that is available, the State, through one of it's entities  State Attorney, Clerks, or even the Courts  failed to ensure that the results of the appeal were communicated, the matter was re-set for trial, and Defendant was tried in a timely manner.
Accordingly, in the balancing of the responsibilities for pursuing this matter in a "speedy" manner, the fault must rest with the State for it [sic] negligent actions. This is a case that truly "fell through the cracks."

Whether the Defendant Properly Asserted his Speedy Trial Right
Doggett and Barker also require the Court to analyze whether Defendant asserted his right to a speedy trial. As previously noted, Defendant had attempted to assert his right to speedy trial, after waiving same, under Florida's Speedy Trial rule. The courts have already decided against the Defendant on this matter. The issue presented before the Court is his attempt to assert a speedy trial violation on a Federal Constitutional basis since filing his Writ of Prohibition on October 3, 1994. The State asserts that the record is devoid of any attempt to assert, *378 or re-assert, a demand for speedy trial subsequent to filing the Writ.
Defendant alleges that he did nothing, other than call his defense counsel, subsequent to the filing of the Writ. There is no indication of, or even an allegation that, there was any inquiry made of the State Attorney's office, the trial court, the clerk's office or, for that matter, the District Court of Appeal. The Defendant has testified that after calling his attorney once or twice within the year after the Writ was filed, he did nothing. It is interesting to note that the Wingo court held that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates. . . that the defendant did not want a speedy trial." Wingo, 407 U.S. at 536, 92 S.Ct. 2182.
The trial had been set for September 26, 1994. It was cancelled at the request of Defendant and a Stay was entered. Defendant knew the case was on appeal having filed the Writ; that no new trial date was set and could not be set because of the granting of the Stay per his request; and therefore knew that his right to a speedy trial was "on hold" per his actions. While Defendant certainly has the right to appeal the lower court's decisions, he now seeks to claim a violation of a right to speedy trial when his actions tolled his right to trial. No request to lift the stay was filed, no status hearing was ever requested by Defendant or through his counsel, no new demand was filed.
While Defendant asserts that neither he nor his counsel received a copy of a decision from the District Court, they also must readily admit they received no notice of Nolle Pros and no notice setting this matter for trial and pre-trial.[6] Instead, Defendant chose to assume that his case had "gone away." Unlike prior cases cited above, Defendant was aware of the charges, aware that previous trial dates had been set and the procedure therefore, aware of the need to demand speedy trial, aware that his case was stayed and on appeal, and aware that he had not heard from the appellate court. He affirmatively choose to take no action. While Defendant may not have an obligation to affirmatively bring his case to trial, here, he caused the action to be removed both from the trial docket and the active case docket by having the Stay entered.
Likewise, the State failed to follow up with the status on this case. The State also knew that the action was "stayed" pending determination of the Writ. No action was undertaken by the State to ask for a status hearing or to file a motion to activate the case.
Consequently, it appears that both Defendant and the State failed to appropriately follow up on this matter. Defendant's failure to affirmatively assert his right to a speedy trial after he knowingly stayed the action mitigates against Defendant's position. Since this analysis is not a balancing of the State versus Defendant, but a determination of whether or not Defendant has affirmatively asserted this right, the Court finds that Defendant did not affirmatively assert his constitutional right to a speedy trial and, in fact, affirmatively "stayed" that right and never requested that the stay be lifted.

Whether the Defendant suffered prejudice as a result of the Delay
The eleven year delay in this matter is extraordinary. The delay is also *379 more than sufficient to find that such time frame makes it "presumptively prejudicial." Yet the "presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria,. . . It is part of the mix of relevant facts and its importance increases with the length of the delay." Doggett at 655-56, 112 S.Ct. 2686. A defendant does not necessarily have to specifically identify and prove the manner of prejudice to trigger the inquiry when the time frame allows a presumption of prejudice. Yet there must be some prejudice.
Excessive delay can cause prejudice in many ways including: oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's ability to defend himself may be impaired. Of the possible prejudices "the most serious is the last [impairment of memories and loss of exculpatory evidence], because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Doggett at 654, 112 S.Ct. 2686; Barker at 532, 92 S.Ct. 2182.
Examining each of these areas in the present case suggests that the presumption of prejudice may have been overcome. First is the issue of "oppressive pre-trial incarceration." During the course of this matter Defendant was on a release status. He was released on bond with very limited restrictions. There is no indication that throughout the course of his initial plea, trial sets, appeals, trial re-sets, Writ application, and subsequent eleven years delay that he was under any type of incarceration. No application, during the course of that time, was made by Defendant to the Court for release from any prison or confinement, nor was the existence of any suggested during argument on this Motion. Defendant in fact thought the case was over and he was free to do as he wished.
Second, it appears that from the time of the application for the Writ and during the course of the next eleven years, Defendant was not under any anxiety or concern. He has testified that having not heard from the appellate court, he assumed the Writ was granted and that the case had been dismissed. He just didn't worry about it  until May 4, 2005  when he received notice from the Court to appear for a status hearing.
Lastly, but most significantly, is the possibility of prejudice to Defendant with regard to his ability to defend himself in this matter. It is common knowledge that over extended periods of time, witnesses' memories fade, witnesses and victims disappear or are hard to locate, and documents get lost, destroyed, or misplaced. The obvious concern in all these areas are for matters that are affected by the passage of time.
In this case, the incident involved two counts of sexual activities with a child, both first degree felonies. The child/victim at the time was not an infant or toddler. She was thirteen years of age. She is now approximately twenty-five years of age. The victim was the stepdaughter of Defendant, living in the house with him. According to information provided to the Court at the hearing, the victim clearly remembers the incident, is able and willing to testify, and was present in court at the hearing on this Motion.
Defendant, at the time of the arrest, in fact on the day after the event, "confessed" to the actions alleged in this matter. The State has indicated this will be introduced at the trial. When the matter was set for trial initially, (June 1, 1993), at which time the initial plea was taken, no motion to suppress had been filed as to the statement. After the matter was reversed and remanded and sent back down for withdrawal *380 of the plea, the case was re-set for trial on July 25, 1994, and subsequently re-set for August 15, 1994, and then September 26, 1994. No motion to suppress directed to the confession has been filed prior to any of these trial dates. In fact, this hearing was heard on July 29, 2005, three days before the new August 1, 2005, trial date. Again, no motion seeking to suppress the confession has been filed.
Review of the court file does not demonstrate any witness list filed by Defendant for any of the trial dates. The State lists only the victim and the mother of the victim. Witnesses' memories or recollection as to defense witnesses appears not to be an issue in this matter.
At the hearing, defense counsel alleged possible prejudice under four areas. First, that the victim was a minor and memories may have dimmed and that the victim would not want to testify and be forced to "relive" the event. The victim indicated, via the State Attorney, that she does well remember the incident and is willing to testify.
Defense further argued that the public outcry for sexual offenses is greater now than it was eleven years ago. While the publicity may be more pronounced, there is no evidence that the offense is viewed any more or less serious now than then. In addition, as the State noted, the purpose of voir dire is to provide a mechanism to obtain jurors who will try the case only on the facts and law before them and not on public opinion.
Lastly, defense argued that Defendant will have his life styled [sic] "prejudiced" since he has been living under the perception that the Writ had been granted. Defendant's perception was a creature of his creation. Rather than follow up and check with the Court or the clerk, Defendant chose to believe and proceed with his life as though the charges had been dismissed. Defendant can not claim prejudice caused by a life style he lived founded upon facts that he wished were true, but were not.

Conclusion
This matter is unusual in many senses. Unlike Doggett, which involved a[sic] 8 ½ year delay between the indictment and the arrest, and Madonia, which involved a 3 year delay between the filing of the charges and the arrest, Defendant was arrested the day after the date of the alleged criminal act. He was charged under an information within two months and approximately two weeks later was arraigned. With a trial set within a reasonable period, he elected to enter a plea two months later. He encountered delays from subsequent appeals and re-set of his trials with waivers of speedy trial entered.
However, the delay which we now address was started by Defendant requesting that his case be stayed. The subsequent filing of the Writ and the extraordinary delay which followed was known to him. No efforts were made to request the stay be lifted, to determine the status of the appellate action, or to otherwise seek information or action from either the trial court or the appellate court. Clearly, the delay is well beyond the reasonable  and almost to the point of the absurd. The State was also negligent in not seeking information or action from the trial or appellate court as to the status of the case. Therefore, responsibility for the delay in some part lies with both the State and Defendant.
Once the Stay was obtained and the Writ of Prohibition filed  both by Defendant  the record is devoid of any substantial efforts by Defendant to assert, or re-assert, a demand for speedy trial. Any effort, be it a motion by counsel or even pro se, or even a letter of inquiry could possibly be considered an assertion by Defendant *381 of a desire for a speedy resolution to his case. There is none.
While prejudice can be presumed from the extended delay, here the presumption appears to have no basis. The facts of this case suggest that the only witnesses that might testify are still available and are able and willing to testify; that the confession obtained at the time of the event will be offered without any indication that suppression issues exist; that Defendant has listed no witnesses and, therefore, should have no witness problems; and there has been no indication that any exculpatory evidence or documentary evidence is no longer available. In summary, other than the lapse of eleven years occasioned by the granting of the stay and the filing of the Writ, the case is ready to proceed to trial as it has been on a least four previous occasions.
WHEREFORE, the Court finds that despite the delay in time, Defendant has failed to demonstrate that he has asserted a right to speedy trial after obtaining a stay in this matter, and has failed to demonstrate even a modicum of prejudice that would affect his ability to proceed to trial in this matter and accordingly, the Motion to Dismiss is hereby DENIED.
DONE AND ORDERED in chambers at Orlando, Orange County, Florida, this day of August, 2005.
PETITION DENIED.
PALMER, ORFINGER and TORPY, JJ., concur.
NOTES
[1] On the date of arraignment, Defendant's attorney, Donald E. Van Koughnet, entered a written plea of "Not Guilty" and noted "Waives speedy trial of such charges." See "Defendant's Pleas at Arraignment" filed with the Clerk on March 25, 1993, and contained in the Court file.
[2] Trial had been set by Order of the Court dated March 26, 1993, for the trial period of June 1, 1993, with a pre-trial for May 25, 1993.
[3] The scoresheet showed a total of 350 points with a recommended sentence of "10 (9-12) YRS" and a permitted sentence of "7-17 years." Based upon an apparent "downward departure agreement" with the State, the Court imposed a sentence of 2 years community control with conditions, followed by 8 years of probation with conditions; each count to run concurrent. See Sentencing Order of August 16, 1993. See also, Judge Griffin's specially concurring opinion.
[4] No written documentation (no opinion, no mandate) of the ruling of the Fifth District Court of Appeal on the Writ of Prohibition is contained within the Court file nor does it appear on the trial clerk's computer screen. Defendant testified at the hearing in this matter that he had no knowledge of, and had not received, the ruling [of] the Fifth District Court of Appeal until this Court sent him notice of a status hearing on April 25, 2005.
[5] Per computer docket screen from the Fifth District Court of Appeal. Apparently the District Court file has been destroyed.
[6] Defendant was aware of the process of trial dates being set having received at least three prior notices of setting this matter for trial. He was also aware of the process of demanding a speedy trial having previously filed requests, both through counsel and pro se.