# Third District Court of Appeal

## State of Florida

Opinion filed October 16, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1527
Lower Tribunal No. F19-14773
_____

**Robert Alan McCartney,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Alberto Milian, Judge.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Christina L. Dominguez, Assistant Attorney General, for appellee.

Before LOGUE, C.J., and MILLER and GOODEN, JJ.

MILLER, J.

Following a jury trial, appellant, Robert A. McCartney, was convicted of one count of sexual battery with a deadly weapon or use of force likely to cause serious personal injury, in violation of section 794.011(3), Florida Statutes (1991), and sentenced to an upward departure sentence of life in prison. On appeal, he contends that pretrial prosecutorial delays violated his constitutional speedy trial rights. We have jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). Finding the delays were necessitated by the court response to the COVID-19 pandemic, we discern no constitutional violation and affirm in all respects.[1]

## FACTS AND PROCEDURAL HISTORY

On August 12, 1991, the victim, J.E., was beaten and vaginally penetrated in her bedroom while she lay sleeping. She was unable to see her assailant, but she heard his voice and concluded he was a Caucasian male in his 20s or 30s.

Following the assault, the victim was transported to the Roxcy Bolton Rape Treatment Center at Jackson Memorial Hospital, where she underwent a comprehensive physical examination. Medical personnel collected oral,

---

[1] We summarily affirm the remaining claims of error. See Franks v. Delaware, 438 U.S. 154 (1978); Carratelli v. State, 832 So. 2d 850, 856 (Fla. 4th DCA 2002); § 921.001(8), Fla. Stat. (1987); Barfield v. State, 594 So. 2d 259, 261 (Fla. 1992).

vaginal, and cervical swabs. Two bed sheets and a shirt were additionally collected and preserved for future testing. An analysis of the swabs yielded a partial DNA profile, which was processed in the Combined DNA Index System ("CODIS")—a forensic database used by law enforcement to identify unknown offenders. The case, however, remained unsolved for nearly twenty years.

In late 2018, the Florida Department of Law Enforcement ("FDLE") issued a report notifying the Miami-Dade Police Department of a potential investigative lead. The report reflected that the partial profile in the CODIS database was associated with McCartney, an identified offender, but further cautioned that the opinion was inconclusive due to the possibility of allelic dropout occasioned by a low DNA concentration. The Miami-Dade Police Department Forensic Services Bureau subsequently generated its own report indicating that the profile obtained from the serological evidence collected at the crime scene was associated with a named offender, but also cautioned that further confirmatory testing was required.

Detective William Nadramia, a cold case detective with the Miami-Dade Police Department Special Victims Bureau, was assigned to investigate the case. He obtained an arrest warrant, and, on September 10,

2019, McCartney was apprehended in Georgia and served with the warrant. On September 26, 2019, McCartney was extradited to Florida.

On October 21, 2019, the State filed a felony information charging McCartney with one count of sexual battery with a deadly weapon or use of force likely to cause serious personal injury under section 794.011(3). In January of 2020, law enforcement agents procured and executed a search warrant to collect confirmatory buccal swabs from McCartney. The following month, Bode Technology Group, Inc. ("Bode") reported that a partial profile obtained from a vaginal swab collected from the victim was consistent with a mixture of DNA profiles, including at least one male contributor. However, Bode required retesting with a greater amount of genetic material before issuing an opinion within a reasonable degree of scientific certainty.

On January 16, 2020, prosecutors orally moved for blood and saliva standards. McCartney was not transported to court, and the State later withdrew its motion. On January 28, 2020, Detective Nadramia obtained a search warrant for McCartney's DNA standard, which an officer collected and submitted to Bode for comparison.

On March 5, 2020, McCartney filed a notice of expiration of speedy trial. The following day, the court conducted a hearing and set a trial date for March 16, 2020. On March 10, 2020, the State sought a two-week

4

extension of the speedy trial period.  The trial court found good cause and granted the extension.

On March 13, 2020, the Florida Supreme Court tolled "[a]ll time periods involving the speedy trial procedure, in criminal and juvenile court proceedings" in response to the COVID-19 pandemic.  In re: COVID-19 Emergency Procedures in the Florida State Courts, Fla. Admin. Order No. AOSC20-13 (Fla. Mar. 13, 2020).[2]  In a separate provision of the same order, the court specifically suspended jury selection and all criminal jury trials beginning March 16, 2020.  Id.

On March 20, 2020, the criminalist issued a report opining that McCartney was a contributor to the DNA obtained from the vaginal swabs.  Meanwhile, subsequent Florida Supreme Court administrative orders extended the speedy trial suspension to October 4, 2021.[3]  The court also entered several more tolling orders and ultimately delegated responsibility

---

[2] https://www.floridasupremecourt.org/content/download/631744/file/AOSC20-13.pdf.

[3] In re: COVID-19 Health and Safety Protocols and Emergency Operational Measures for Florida Appellate and Trial Courts, Fla. Admin. Order No. AOSC21-17 (June 4, 2021), Amendment 3, https://supremecourt.flcourts.gov/content/download/820723/file/AOSC21-17-Amendment-3.pdf.

for the safe resumption of in-person trials to the chief judges of the circuit courts.[4]

On October 23, 2020, in-person jury selection and trials resumed in Miami-Dade County, albeit in a more limited capacity than "conducted [] in the past."[5]  On December 9, 2020, the chief judge of the Eleventh Judicial Circuit suspended in-person jury trials.  The suspension remained in effect until March 1, 2021.[6]  On June 25, 2021, McCartney moved to dismiss the case on constitutional speedy trial grounds.  The trial court denied relief.

---

[4] In re: Comprehensive Covid-19 Emergency Measures for Florida Trial Courts, Fla. Admin. Order No. AOSC20-23, (May 6, 2021), Amendment 13, https://www.floridasupremecourt.org/content/download/736009/file/AOSC20-23-Amendment-13.pdf.

[5] COVID-19 Advisory #36: Miami-Dade Courts will Transition to Phase 2 COVID-19 Emergency Operations on Wed., Sept. 23rd, Eleventh Judicial Circuit of Florida (Sept. 23, 2020), https://www.jud11.flcourts.org/coronavirus/PgrID/2391/PageID/11/ArtMID/2392/ArticleID/3531.

[6] COVID-19 Advisory #56: Jury Trials Suspended through January 31, 2021, Eleventh Judicial Circuit of Florida (Dec. 9, 2020), https://www.jud11.flcourts.org/coronavirus/ArtMID/2392/ArticleID/4329/COVID-19-Advisory-56-Jury-Trials-Suspended-through-January-31-2021; COVID-19 Advisory #60: Jury Trial Suspension Extended through February 28, 2021, Eleventh Judicial Circuit of Florida (Jan. 20, 2021), https://www.jud11.flcourts.org/coronavirus/ArtMID/2392/ArticleID/4338/COVID-19-Advisory-60-Jury-Trial-Suspension-Extended-through-February-28-2021; COVID-19 Advisory #70: Jury Trials to Resume March 1, 2021, Eleventh Judicial Circuit of Florida (Feb. 10, 2021), https://www.jud11.flcourts.org/coronavirus/ArtMID/2392/ArticleID/4366/COVID-19-Advisory-70-Jury-Trials-to-Resume-March-1-2021.

On September 2, 2021, the chief judge of the circuit again suspended in-person trials until September 20, 2021.[7] By the following month, both the State and defense announced they were ready for trial. Not wishing to proceed with masked jurors, however, the defense obtained a continuance. The parties then jointly sought a continuance for the following trial settings.

On June 21, 2022, the case proceeded to trial. A jury found McCartney guilty, as charged. The trial court imposed an upward departure sentence of life in prison, finding that McCartney engaged in an escalating pattern of conduct, as demonstrated by a progression of increasingly violent crimes. This appeal followed.

## STANDARD OF REVIEW

Constitutional issues present questions of law subject to de novo review. See Oliva v. Fla. Wildlife Fed'n, Inc., 281 So. 3d 531, 537 (Fla. 1st DCA 2019). To the extent such a review implicates factual findings, those

---

[7] COVID-19 Advisory #111: In-Person Trials and Hearings Suspended for Two Weeks, Eleventh Judicial Circuit of Florida (Sept. 2, 2021), https://www.jud11.flcourts.org/coronavirus/ArtMID/2392/ArticleID/4453/CO VID-19-Advisory-111-In-Person-Trials-and-Hearings-Suspended-for-Two-Weeks; COVID-19 Advisory #112: In-Person Trials and Hearings to Resume on Monday, Sept. 20th, Eleventh Judicial Circuit of Florida (Sept. 17, 2021), https://www.jud11.flcourts.org/coronavirus/ArtMID/2392/ArticleID/4457/CO VID-19-Advisory-112-In-Person-Trials-and-Hearings-to-Resume-on-Monday-Sept-20th.

findings may not be disturbed if they are supported by competent, substantial evidence.  See Wright v. State, 300 So. 3d 296, 299 (Fla. 3d DCA 2020).

## ANALYSIS

I. *Constitutional Right to Speedy Trial*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  Amend. VI, U.S. Const.  This right is further guaranteed by article 1, section 16 of the Florida Constitution and fortified by Florida Statute.  See § 918.015(1)–(2), Fla. Stat. (2020) ("In all criminal prosecutions the state and the defendant shall each have the right to a speedy trial.").

II. *Four Prong Barker Inquiry*

The case of Barker v. Wingo, 407 U.S. 514 (1972), is the seminal United States Supreme Court case construing this constitutional directive.  It delineates a fourfold balancing test for use in assessing potential speedy trial violations.  See Barker, 407 U.S. at 530–33.  The first prong addresses the length of the delay between arrest and trial.  See United States v. Loud Hawk, 474 U.S. 302, 310, 312 (1986).  Short periods of delay are insufficient to merit further inquiry, Doggett v. United States, 505 U.S. 647, 652 n.1 (1992), but delays exceeding one year are ordinarily found to be

presumptively prejudicial, Murphy v. State, 351 So. 3d 242, 246 (Fla. 2d DCA 2022).

The second prong involves the reasons for the delay. Barker, 407 U.S. at 531. This inquiry creates a progressive scale driven by causation. Deliberately dilatory tactics designed to "hamper the defense" are "weighted [more] heavily against the [State]" than periods of delay resulting from negligence. Id. Justifiable reasons for delay, such as missing witnesses or natural disasters, are not weighed against the State at all. See id.; see also United States v. Benjamin-Hernandez, 49 F.4th 580, 585 (1st Cir. 2022) (finding second Barker factor did not weigh in favor of constitutional violation because of, inter alia, "circumstances out of the parties' control, including the Hurricane Maria natural disaster"); United States v. Fonseca, No. 22-13152, 2023 WL 7272320, at *4 (11th Cir. Nov. 3, 2023) (holding "[a]n unforeseen global health emergency is precisely the kind of 'valid reason' out of the government's control that justifies appropriate delay") (quoting Barker, 407 U.S. at 531); United States v. Crittenden, No. 4:20-CR-7 (CDL), 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020) (finding the risks associated with pandemic justified an appropriate delay) (citing Barker, 407 U.S. at 531).

The third prong addresses the assertion of speedy trial. While Barker expressly rejects "the rule that a defendant who fails to demand a speedy

9

trial forever waives his right," the "frequency and force" is relevant. 407 U.S. at 528–29. And the failure to raise a timely assertion means that a defendant must make a stronger showing as to the remaining factors in order to prevail. Id. at 528.

The fourth prong concerns whether the defendant was prejudiced by delay attributable to the State. "A defendant does not necessarily have to specifically identify and prove the manner of prejudice to trigger the inquiry" when there is a presumption of prejudice. See Szembruch v. State, 910 So. 2d 372, 379 (Fla. 5th DCA 2005). But there still "must be some prejudice," such as "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the defendant's ability to defend himself may be impaired"—the latter being the most serious. Id. (quoting Doggett, 505 U.S. at 654).

### III.   *This Case*

In the case at hand, McCartney was brought to trial 1,015 days after he was arrested. This delay is more than sufficient to merit inquiry into the remaining Barker factors. See Doggett, 505 U.S. at 652 n.1. We must therefore examine the level of responsibility the State and McCartney, respectively, bear for the delay.

10

McCartney was arrested in Georgia on September 10, 2019, and transferred into Miami-Dade County custody on September 26, 2019. The State did not receive conclusive DNA results until March 20, 2020. Thus, the first six months of delay were attributable to the State. However, there is no indication this delay was deliberate. Instead, the record indicates that a confluence of factors, including attorney turnover, technological changes, and McCartney's failure to submit to serological standards in court, hindered the State's ability to timely procure conclusive results. At worst, these reasons constitute negligence under <u>Barker</u>. Thus, this delay should not be weighed heavily against the State.[8]

The next series of delays were due to responsive measures designed to preserve public safety during the COVID-19 pandemic. It is well-settled that a crisis or emergency constitutes a constitutionally valid reason for postponing trial. <u>See</u> <u>United States v. Scott</u>, 245 F. App'x 391, 394 (5th Cir. 2007) (affirming exclusion of time following Hurricane Katrina); <u>Furlow v. United States</u>, 644 F.2d 764, 768 (9th Cir. 1981) (affirming exclusion of time

---

[8] McCartney contends we should measure the State's readiness for trial from the date the victim's standards were matched with genetic material obtained from the vaginal swabs. We are not so persuaded. It stands to reason that the victim's DNA would appear on swabs from her body cavity. Thus, the expert opinion offered nothing that was not otherwise reasonably implied under the facts of the case.

following Mount St. Helens eruption); United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (excluding time following September 11, 2001 terrorist attack). Recognizing the health risks inherent in conducting a jury trial during the pandemic, several courts have found that excluding time under the Federal Speedy Trial Act, 18 U.S.C. § 3161, in response to COVID was proper. See United States v. Shaner, No. 3:18-CR-35, 2020 WL 6700954, at *6 (M.D. Pa. Nov. 13, 2020) (concluding trial continuances due to COVID-19 pandemic do not violate Speedy Trial Act); United States v. Tapp, No. CR 19-35, 2020 WL 6483141, at *2 (E.D. La. Nov. 4, 2020) (same); United States v. Reese, 482 F. Supp. 3d 816, 819 (D. Minn. 2020) (same); United States v. Pond, No. 18-50106-JLV, 2020 WL 3446677, at *2 (D.S.D. June 24, 2020) (same); United States v. Merrick, No. 20-CR-09-JD, 2020 WL 3887779, at *3–4 (D.N.H. July 8, 2020) (same). Hence, we conclude these delays were justified under Barker and should not be weighed against the State at all.

The last series of delays concern the three-and-a-half-month period following the resumption of in-person criminal jury trials. There is no indication that these delays were attributable to anything other than pretrial litigation. Hence, the delays during this time should not be weighed against the State at all.

12

As to the third prong under Barker, McCartney did not raise any constitutional speedy trial argument until well after jury trials resumed. Although this should not be construed as a waiver, we cannot say that McCartney asserted his right with "frequency and force." Barker, 407 U.S. at 529.

Finally, regarding prejudice, McCartney has failed to articulate any impairment to his defense. See Szembruch, 910 So. 2d at 379 ("Of the possible prejudices 'the most serious is . . . impairment of memories and loss of exculpatory evidence, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'") (quoting Doggett, 505 U.S. at 654) (internal brackets omitted). Indeed, the record supports the opposite conclusion. McCartney engaged in discovery, filed and litigated significant pretrial motions, obtained supplemental DNA discovery, conducted depositions, and obtained expert costs.

Although the first Barker prong—length of delay—weighs in favor of finding a constitutional violation in this case, the last three factors do not. Most of the delay was the result of a reasonable response to a declared public health emergency, and McCartney neither asserted his constitutional right without unreasonable delay nor alleged particularized or substantial prejudice resulting from the delay. Though we recognize that no single

13

Barker factor is dispositive, a demonstration of prejudice is necessary once a defendant has been convicted. See Perez v. Sullivan, 793 F.2d 249, 256 (10th Cir. 1986). Accordingly, we conclude there was no established constitutional violation and affirm the judgment and sentence under review.

Affirmed.